HUNTINGTON BRANCH, NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, Housing Help, Inc., Mabel Harris, Ella Owens, Carrie Howard, Thelma Latta, Perrepper Crutchfield, Kenneth L. Cofield, Plaintiffs-Appellants,

v.

The TOWN OF HUNTINGTON, NEW YORK, United States Department of Housing and Urban Development, Samuel Pierce, Kenneth C. Butterfield, Claire Kroft, Kenneth Deegan, Edward Thompson, Joseph Clemente, Defendants,

The Town of Huntington, New York, Kenneth C. Butterfield, Claire Kroft, Kenneth Deegan, Edward Thompson, Joseph Clemente, Defendants-Appellees.

No. 1224, Docket 82–6030.

United States Court of Appeals, Second Circuit.

Argued June 1, 1982.

Decided Sept. 28, 1982.

**392**

Richard F. Bellman, New York City (Lewis M. Steel, Steel & Bellman, P.C., New York City, Thomas Atkins, Curtis Rodgers, Margrett Ford, N. A. A. C. P., New York City, of counsel), for plaintiffs-appellants.

Richard C. Cahn, Melville, N. Y. (Cahn, Wishod & Wishod, Melville, N. Y., of counsel), for defendants-appellees Town of Huntington, N. Y., Kenneth C. Butterfield, Claire Kroft, Kenneth Deegan, Edward Thompson, Joseph Clemente.

Before KAUFMAN and WINTER, Circuit Judges, and WARD,* District Judge.

RALPH K. WINTER, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, Costantino, *Judge,* dismissing for lack of standing a complaint alleging that a Huntington, New York zoning ordinance is racially discriminatory and therefore invalid. We reverse and remand.

## BACKGROUND

The complaint alleges the following facts. Believing there exists a need for increased low and moderate income housing in Huntington, New York, plaintiff-appellant Housing Help, a non-profit housing assistance corporation, secured in 1978 an option to purchase a 14.6 acre tract in the Greenhaven/East Northport section of that town,[1] a predominantly white area currently zoned for single-family residential units on one acre lots. Housing Help hoped to secure federal funding to construct on the site a 162 unit multi-family housing project to be known as Matinecock Court. Huntington officials were apprised of Housing Help's goals, and on February 22, 1980, Housing Help requested that they schedule a public hearing to consider amending the zoning ordinance to permit the project. That request was referred to the Huntington Planning Department for study. The Department has yet to report.

The project was to be developed as a so-called HUD Section 8 (42 U.S.C. § 1437f (1976)) new construction housing program in cooperation with National Housing Partnership, an organization sponsoring low cost housing projects. Section 8 funds are available only for projects in towns which have submitted to HUD a Housing Assistance Plan (HAP), 42 U.S.C. § 5304(a)(4) (Supp. IV 1980) specifying municipal housing needs, and realistic goals to accommodate those needs, including new construction of HUD assisted rental units. 42 U.S.C. § 5304(a)(4)(B) (Supp. IV 1980). If the goals are unrealistic, HUD cannot approve the HAP.

At the time of Judge Costantino's decision, a 1979–1982 HAP was in force in Huntington. Although the HAP provided a goal of "zero" for new projects, HUD approved it since there were insufficient federal funds to build any projects. However, HUD informed Huntington that if funds became available a new HAP would be required. Under the new HAP, a goal of 100 new or substantially rehabilitated units would be required.

When funds are available, HUD publishes a Notice of Funding Availability (NOFA) and developers respond with proposals for projects in designated sub-areas. When a proposal is received from a private develop-

---

* Honorable Robert J. Ward, United States District Judge for the Southern District of New York, sitting by designation.

1. Huntington is a town of approximately 200,-000 people located in the northwest corner of Suffolk County, New York. Ninety-five percent of the population is white and 5% is minority, largely Black and Hispanic.

er, HUD gives the affected municipality an opportunity to comment. Under certain circumstances, a municipality's objection will effectively veto a proposal. For example, if the municipality objects because the proposal is inconsistent with a HUD-approved HAP, the proposal must be rejected. 42 U.S.C. § 1439 (1976). In addition, if the number of units in the proposal exceeds the town's HAP goal by more than 20%, HUD cannot approve it. If no dispositive objection exists, the proposal is then compared to other proposals in the same sub-area, ranked in relation to them, and either funded or not funded depending on the ranking and available monies.

In the present case, a NOFA was published for Suffolk County on June 19, 1980, and Housing Help then proposed their 162-unit Matinecock development. HUD should have rejected the project as proposed, however, because it exceeded by more than 20% the governing zero-goal HAP and the 100-unit goal in the would-be HAP as well.[2] HUD nevertheless ranked Matinecock Court in a four way tie for sixth place. One of the other sixth place finishers was Huntington Park, a proposal sponsored by the Town of Huntington for a project in Huntington's multi-family zone. The sixth place ranking constituted qualified approval of both projects by HUD.

On February 23, 1981, the Huntington Branch NAACP, its president, Housing Help, and certain named individuals in need of low and moderate income housing in Huntington filed this four-count complaint against both the Town of Huntington and HUD. Count 1 alleges that Huntington's zoning ordinance discriminates against plaintiffs in violation of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631 (1976), the Civil Rights statutes, 42 U.S.C. §§ 1981, 1982 and 1983 (1976), and the Fourteenth Amendment. Count 2 alleges that qualified approval of the Huntington Park project was also discriminatory. Count 3 alleges that HUD's approval of the "zero" goal HAP violated Title VIII and the Housing and Community Development Act of 1974, 42 U.S.C. § 5301, *et seq.* (1976) insofar as the HAP "contribute[s] to and perpetuate[s] racial segregation." Finally, Count 4 alleges that Huntington's zoning law also violates the New York Town Law insofar as the zoning scheme was exclusionary and discriminatory.

Meanwhile, Section 8 funds were effectively eliminated for Fiscal Year 1981. On August 13, 1981, a motion to dismiss was filed by both HUD and Huntington. On January 25, 1982, Judge Costantino granted the motion on the grounds that the plaintiffs lacked standing. Relying on this Court's opinion in *City of Hartford v. Town of Glastonbury,* 561 F.2d 1048, (2d Cir. 1977) (en banc) *rev'g,* 561 F.2d 1032 (2d Cir. 1976), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 766, 54 L.Ed.2d 781 (1978), he held that the virtually complete absence of Section 8 funds rendered meaningless the relief requested in the complaint. Judge Costantino reasoned that, because of the lack of such funding, construction of Matinecock would not result from either amendment of the "zero" goal HAP or invalidation of the zoning ordinance.

## DISCUSSION

The principal issue on appeal is whether Judge Costantino erred in tying plaintiffs' standing to the availability of specific federal housing subsidies.[3] The

2. Plaintiffs represent that its proposal can and will be scaled down to comply with the 20% threshold. Defendants have not questioned this representation.

3. Plaintiffs did not appeal from the dismissal with respect to HUD because Huntington's requisite goal will rise to 100 if Section 8 funds become available and Housing Help can revise downward the number of units proposed in Matinecock. In addition, the Town itself has withdrawn the Huntington Park project, thus rendering Count 2 moot.

Certain additional issues can be disposed of summarily. In Point III of their brief, appellees ask that the ordinance be upheld because it is not a clear abuse of discretion. Point IV disputes appellants' ability to demonstrate discriminatory intent, and Point V claims the Town's zoning and building judgments are entitled to deference. Each of these arguments is

question is whether, because there are no Section 8 housing monies presently available, the injuries asserted by plaintiffs are not "likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). If so, an adjudication as to the validity of the ordinance would resolve an abstract dispute in which the plaintiffs are not "in danger of suffering any particular concrete injury as a result . . . ." *United States v. Richardson,* 418 U.S. 166, 177, 94 S.Ct. 2940, 2946, 41 L.Ed.2d 678 (1974). That is not a proper function of courts. However, the requirement that the relief requested be likely to redress the injuries alleged by a plaintiff is not a demand for complete certainty. All that is required is a showing that such relief be reasonably designed to improve the opportunities of a plaintiff not otherwise disabled to avoid the specific injury alleged. To ask plaintiffs to show more than that they "would benefit in a tangible way from the court's intervention," *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975), would be to close our eyes to the uncertainties which shroud human affairs.

■■ Where long term financing is the issue, it is particularly unreasonable to ask plaintiffs to prove more than some reasonable prospect for future financing. To be sure, those who have absolutely no realistic financing capability have no standing, *see Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261 n.7, 97 S.Ct. 555, 561 n.7, 50 L.Ed.2d 450 (1977), because, as to them, invalidation of an offending ordinance would afford only moral satisfaction rather than a realistic opportunity to proceed with construction. Indeterminacy of financing alone, however, is not enough to dismiss such an action, since the multitude of factors affecting ultimate financing capability are too variable to permit certainty in prediction. The ebb and flow of the economy, long term interest rates, and the political environment all affect the existence and level of private and governmental funding. Moreover, the likelihood of Housing Help's securing financing is in part related to whether its proposal complies with local zoning ordinances. Private lenders as well as government agencies will be understandably reluctant to make sizable commitments of funds for projects which violate zoning laws and which, at best, cannot be started before years of litigation are completed. In such circumstances, dismissal of a complaint because of a lack of committed financing may well prevent any litigant from challenging a zoning ordinance.

■ Plaintiffs have alleged diligent efforts to secure funding under an existing federal program and a relatively favorable

---

overcome by the allegation of racially discriminatory intent.

In Point VI appellees justify dismissal on (a) failure to invoke substantially equivalent state judicial remedies as required under Section 810(d) of Title VIII, 42 U.S.C. § 3610(d) (1976), and (b) failure to exhaust specific local remedies in the form of filing a formal application for re-zoning. With respect to (a), appellants sued under Section 812 of the Act, a specific alternative to Section 810 which allows plaintiffs to seek "immediate judicial review" in a federal action. *Gladstone, supra,* 441 U.S. at 106, 99 S.Ct. at 1611. With respect to (b) the existence of Section 810 indicates that Congress gave explicit consideration to the availability of local remedies and the lack of an exhaustion requirement in Section 812 strongly suggests that such a requirement was not intended. Moreover, the purpose of allowing "immediate judicial review," *id.,* as an alternative to local remedies would be seriously undercut if Section 812 actions were conditioned upon prior exhaustion of state administrative remedies. Finally, since the challenged action is a zoning ordinance rather than an administrative decision, it is not clear that realistic administrative remedies exist.

Finally, appellees contend that plaintiffs' claim is time-barred because Section 812 requires that a complaint be filed within 180 days of the alleged discrimination and the zoning ordinance was not challenged within 180 days of its passage. We reject this claim also. The relevant act is the denial of approval of Matinecock and the complaint was thus filed well within the statutory period. Indeed, appellees' argument would preclude any challenge to the ordinance under Title VIII since Title VIII itself was enacted more than 180 days after the ordinance. Moreover, the alleged violations are continuing. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 376–381, 102 S.Ct. 1114, 1123–1125, 71 L.Ed.2d 214 (1982).

response by HUD officials. We believe those allegations are sufficient notwithstanding the present unavailability of Section 8 funds.

In *Village of Arlington Heights, supra,* both MHDC, a non-profit housing developer, and individual plaintiffs challenged a village zoning ordinance which precluded the development of a low income housing project. Part of the standing challenge centered on MHDC's need "to secure financing, qualify for federal subsidies and carry through with construction." *Id.* at 261, 97 S.Ct. at 561. The Court noted, however, that "all housing developments are subject to some extent to similar uncertainties." *Id.* Focusing on the specific project in question, the Court concluded that "[w]hen a project is as detailed and as specific as Lincoln Green, a court is not required to engage in undue speculation as a predicate for finding that a plaintiff has [standing]." *Id.* No doubt the detail referred to included MHDC's lease and contract of purchase of the land, both of which were conditioned upon securing re-zoning, and the specific plans that had been drawn up on the project. *Id.* at 256–58, 97 S.Ct. at 558–559. The record here indicates a sufficiently similar degree of detail on the part of Housing Help. An option to purchase the 14.6 acre site upon which Matinecock Court would be built is alleged to have been secured,[4] and detailed plans as to the number and nature of the dwelling units have been drafted. Like *Arlington Heights,* "[t]he challenged action ... stands as an absolute barrier to constructing the housing [Housing Help desires] to place on the [Greenhaven/East Northport] site." *Id.* at 261, 97 S.Ct. at 561. Invalidation of the challenged ordinance, therefore, would tangibly improve the chances of construction of Matinecock Court.

*City of Hartford v. Town of Glastonbury, supra,* is inapposite. In that case, Hartford challenged HUD's Fiscal Year 1975 waiver of its "expected to reside" requirements as to applications by certain Connecticut towns for Community Development Block Grants on the grounds that the waiver violated Title VI. The panel was sharply divided on whether Hartford would in fact have received more funds if proper applications by the other towns were required. For our purposes, the critical fact is that the majority concluded there was no likelihood that Hartford would benefit from a successful challenge to applications made by the other towns. The funds in question were apparently designated for one fiscal year and had been spent by the time of the complaint. Moreover, the other towns gave every indication of being able to submit a proper application if necessary. As a result, the relief sought would not have benefited Hartford.

In this case, we cannot exclude the possibility of Section 8 monies being available for Matinecock. Section 8 has not been eliminated and the availability of Section 8 monies in subsequent years is thus uncertain. Unlike *City of Hartford,* therefore, the relief sought here may benefit the plaintiffs.

## CONCLUSION

The judgment of the District Court is reversed and the case is remanded.

4. At oral argument, appellees raised issues as to the nature of Housing Help's option, a copy of which is not in the record and apparently has not been examined by appellees. Treating this as a motion for summary judgment, however, the burden is on appellees to show there is no set of facts arising under the complaint upon which plaintiff can succeed. Having failed to conduct even the most elementary discovery, appellees can ask us only to construe the pleadings in the light most favorable to appellants. An allegation of an "option" to purchase the particular parcel of land is sufficient to avoid dismissal under *Arlington Heights, supra.* Further consideration of this point must await development of the evidence.