**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRYANT WOODS INN, INCORPORATED,
Plaintiff-Appellant,

v.

HOWARD COUNTY, MARYLAND;
HOWARD COUNTY PLANNING BOARD,
Defendants-Appellees.

THE AMERICAN ASSOCIATION OF

RETIRED PERSONS; THE BAZELON
CENTER; ASSISTED LIVING FACILITIES
ASSOCIATION OF AMERICA; ASSISTED
LIVING LEGAL DEFENSE AND
EDUCATION FUND, INCORPORATED;
NATIONAL FAIR HOUSING ALLIANCE;
OXFORD HOUSE,
Amici Curiae.

No. 96-1244

BRYANT WOODS INN, INCORPORATED,
Plaintiff-Appellee,

v.

HOWARD COUNTY, MARYLAND;
HOWARD COUNTY PLANNING BOARD,
Defendants-Appellants.

THE AMERICAN ASSOCIATION OF

RETIRED PERSONS; THE BAZELON
CENTER; ASSISTED LIVING FACILITIES
ASSOCIATION OF AMERICA; ASSISTED
LIVING LEGAL DEFENSE AND
EDUCATION FUND, INCORPORATED;
NATIONAL FAIR HOUSING ALLIANCE;
OXFORD HOUSE,
Amici Curiae.

No. 96-1284

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-95-595-S)

Argued: March 5, 1997

Decided: August 25, 1997

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Wilkins and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Beth Pepper, STEIN & SCHONFELD, Baltimore, Mary-
land, for Appellant. Louis Paul Ruzzi, Senior Assistant County Attor-

2

ney, Paul Tebbetts Johnson, Deputy County Solicitor, Ellicott City, Maryland, for Appellees. **ON BRIEF:** Barbara M. Cook, Howard County Solicitor, Ellicott City, Maryland, for Appellees. Lois G. Williams, Ellen S. Winter, HOWREY & SIMON, Washington, D.C.; John T. Relman, Christine R. Ladd, WASHINGTON LAWYERS COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Amici Curiae.

_____

## OPINION

NIEMEYER, Circuit Judge:

Bryant Woods Inn, Inc., a group home for handicapped persons, seeks to expand from 8 residents to 15 residents. When Howard County, Maryland, refused to waive its neutral zoning regulation to allow this expansion, Bryant Woods Inn sued the county, contending that it had violated the Fair Housing Act, 42 U.S.C. § 3601 et seq., by refusing to make a reasonable accommodation. Because Bryant Woods Inn has not shown that its proposed expansion relates to the accommodation of disabled residents in seeking equality of housing opportunities, we affirm the district court's summary judgment entered in favor of the county.

I

Richard Colandrea, the owner and resident of an 11-bedroom house in Columbia, Maryland, rents portions of his house to 8 elderly persons who suffer from Alzheimers disease and other forms of dementia and disability. Colandrea, together with his mother, operates the licensed group home through a for-profit corporation, Bryant Woods Inn, Inc. The applicable zoning regulations issued by Howard County, where the house is located, permit this use of Colandrea's house as a matter of right. See Howard County, Md., Zoning Regulations § 110.C.4.b.

Seeking to expand his group home from 8 to 15 disabled or elderly residents, Colandrea filed an application with the appropriate Maryland state licensing agencies. The agencies denied Colandrea's

request, however, until Colandrea had obtained zoning approval for the expansion from Howard County.

Colandrea filed an application with Howard County for a zoning variance, locally called an amendment to the neighborhood's Final Development Plan, to use his house as a "group care facility" limited to 15 disabled residents who will benefit from "the opportunity to live in a smaller, supervised home that provides some daily care in a structured social environment." The proposed expansion would include two daytime employees and one employee at other times. Colandrea proposed to provide existing off-street parking for five to six vehicles for use by employees and occasional visitors. The application indicates that the residents themselves generally do not drive and therefore the facility would not need to provide parking for eight vehicles as required by the applicable zoning regulations, Howard County, Md., Zoning Regulations § 133.D.7.f.

Applicable regulations provide generally for approval of requests "only if [the Planning Board] finds that: (1) the use is consistent with the land use designation of the property . . . and compatible with existing or proposed development in the vicinity,[and] (2) the use will not adversely affect vicinal properties." Howard County, Md., Zoning Regulations § 125.D.2.c. More specifically, any group care facility for more than 8 persons is deemed a nursing home, see id. § 103.A.55, and requires one parking space for every 2 beds, or at least 8 spaces for the 15 residents anticipated in Colandrea's application, see id. § 133.D.7.f. A residential group home with up to eight residents is required to have only four parking spaces. See id. §§ 133.D.1.c & 133.D.2.a.

The staff at the Howard County Department of Planning and Zoning recommended denial of Colandrea's application because it lacked the information necessary for a decision and the county received no response to its requests for information. Colandrea did respond, however, after the staff recommended denial. The Howard County Planning Board decided to proceed with a hearing and to receive Colandrea's response at the hearing.

The Howard County Planning Board conducted a full public hearing on Colandrea's application in February 1994 at which persons tes-

4

tified both for and against the zoning change. Speaking for the expansion were persons representing Colandrea, the Howard County Office of Aging, and the county's Alzheimer Association, and speaking against it were neighbors and three neighborhood associations, as well as the Department of Planning and Zoning staff.

The board received information that only 3 of more than 32 licensed group homes in Howard County had more than 8 residents and that the smaller homes seemed to be functioning "reasonably well" so that "there is a viable position for a facility of up to 8 patients." It received letters from residents reporting that the Colandrea family had operated several businesses from their house which "seem[ed] to include a junk hauling business and a rooming house." One neighbor commented at the hearing:

> This kind of thing, this institutional use needs to be in a different area. As it is now, I don't think anybody has a problem with it. It's this expansion and the construction and the additional parking that's really going to throw it over. The real reason that I think more than eight is needed .. . is the pure economies of scale. I had heard the number quoted twenty-five hundred dollars a month is what each resident pays. Well if you multiply that by 12 months times 8 residents, you're talking about a quarter of a million dollars of receipts in a year. That's a pretty good size in-home business and we as the neighbors feel like we're struggling against a business in this case.

Other neighbors expressed concern about traffic and congestion. One board member added her own comments that when looking at the property at about 9:30 in the morning and again at 4:30 in the afternoon she observed "parking all over the place and also parking in the driveway" and concluded that given the relatively small lot size in the rest of the neighborhood, an expansion of the facility would be too "intense to use on this particular lot" and would result in overflow parking onto the residential street.

In a unanimous written opinion dated March 31, 1994, the Planning Board denied Colandrea's request for a variance to enable him to expand his facility. In its opinion it found as fact that the proposed

5

parking plan "accommodates between four and six vehicles on the site," but "does not allow for easy circulation of the accommodated vehicles and would likely result in fewer cars actually using on-site parking, thus forcing overflow parking onto the street." The board determined that this adverse effect would be aggravated by the wedged shape of the property which gives it a narrow road frontage available for on-street parking. It also found that "even the existing use generates parking congestion on the street. This situation would be exacerbated by Petitioner's proposed expansion." Observing that current zoning requires provision for 8 off-street parking spaces for a group home having 15 residents, the board decided not to waive the minimum requirement because it would "undermine the basic purpose of that requirement and the legitimate interest of the county in reducing the parking and traffic congestion associated with an intensified land use in a residential setting, particularly where the existing use already generates congestion." The board also found that denial of the amendment would not limit housing opportunities for the disabled in contravention of the Fair Housing Act. The board observed that more than 30 assisted-living facilities with 8 or fewer residents exist in Howard County to provide housing opportunity for the elderly and disabled and concluded that 8 residents is a reasonable breakpoint for economic viability and for requiring additional scrutiny of specific impacts. Observing that only 3 group care facilities have 15 residents, the board noted that each one of those facilities has between one and three acres of property, whereas Colandrea's has roughly one-third an acre.

Colandrea moved for reconsideration of the board's decision based on his assurance that none of the disabled residents would park a car and that his expansion would definitely be limited to 15 persons. No further evidence was provided, however, and the board denied Colandrea's motion for reconsideration.

The Planning Board's decision and order became final because Colandrea did not appeal to the Howard County Board of Appeals as provided for in Howard County Code § 16.900(j)(2)(iii), or to the Circuit Court for Howard County. Instead, he filed this action through his corporation, Bryant Woods Inn, Inc., alleging that Howard County intentionally discriminated against Bryant Woods Inn and failed to

6

make a reasonable accommodation for the handicapped in violation of the Fair Housing Act.

On cross-motions for summary judgment, the district court ruled that plaintiffs had failed to present evidence on which a finder of fact could base a conclusion of intentional discrimination. The court also concluded that Howard County's refusal to make an accommodation was justified because the requested accommodation would "fundamentally alter the nature of Howard County's system of land use regulation." Moreover, the court found, any accommodation was not "necessary" under the Fair Housing Act because numerous other group homes existed in Columbia, Maryland, having from 18 to 23% vacancy rates. Finally, the court denied Howard County's request for attorneys fees.

Both parties have appealed. On its appeal, Bryant Woods Inn argues only that the county denied it reasonable accommodation, abandoning its claim of intentional discrimination, and on its cross-appeal, Howard County argues that the district court applied the wrong legal standard in denying its application for attorneys fees.

II

Howard County raises three preliminary defenses that we must address because they go to the appropriateness of our considering this appeal at this time. The county contends (1) that Bryant Woods Inn failed to exhaust its state administrative remedies, (2) that the issues it now raises are not ripe for decision, and (3) that under Burford v. Sun Oil Co., 319 U.S. 315 (1943), we should abstain in favor of the state process. We believe that none of these defenses applies to the circumstances before us.

On its exhaustion defense, Howard County contends that the Federal Housing Act requires Bryant Woods Inn to exhaust available administrative remedies and that Bryant Woods Inn's failure to pursue its statutorily-created right of appeal to the Howard County Board of Appeals under Howard County Code § 16.900(j)(2)(iii) makes this claim premature. But the Fair Housing Act provides otherwise. It permits private enforcement of the Fair Housing Act"whether or not [an administrative] complaint has been filed." 42 U.S.C. § 3613(a)(2); see

7

also Gladstone, Realtors v. Village of Bellwood; 441 U.S. 91, 106 (1979); Jackson v. Okaloosa County, 21 F.3d 1531, 1541 n.16 (11th Cir. 1994); Huntington Branch, N.A.A.C.P. v. Town of Huntington, 689 F.2d 391, 394 n.3 (2d Cir. 1982); House Judiciary Committee Report on the Fair Housing Amendments Act of 1988, H.R. Rep. 100-711, at 39 (1988), reprinted in, 1988 U.S.C.C.A.N. 2173, 2200 ("An aggrieved person is not required to exhaust the administrative process before filing a civil action. The Committee intends for the administrative proceeding to be a primary, but not exclusive, method for persons aggrieved by discriminatory housing practices to seek redress.").

Howard County also contends that Bryant Woods Inn's claim is not "ripe" because Bryant Woods Inn did not complete the administrative process by appealing to the Howard County Board of Appeals. The county argues that Bryant Woods Inn's claim was not ripe until the county was "afforded an opportunity to make such an accommodation pursuant to its own lawful procedures -- unless it is clear that the result of such procedures is foredoomed." United States v. Village of Palatine, 37 F.3d 1230, 1234 (7th Cir. 1994). In deciding whether an issue is ripe, we decide whether the issue is substantively definitive enough to be fit for judicial decision and whether hardship will result from withholding court consideration. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967), modified on other grounds by Califano v. Sanders, 430 U.S. 99, 104 (1977); Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992). While the county must be afforded an opportunity to make a final decision, the issue is sufficiently concrete for judicial resolution once an accommodation is denied. Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decisional procedures are invoked without achieving a just compensation. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985). That difference is attributable to the fact constitutional injury under the Just Compensation Clause does not arise"`unless or until the state fails to provide an adequate postdeprivation remedy for the property loss.'" Id. at 195 & n.14 (quoting Hudson v. Palmer, 468 U.S. 517, 532 n.12 (1984)) (emphasis added). Under the Fair Housing Act, however, a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings. Bryant Woods Inn has alleged a

8

completed violation of the Fair Housing Act, which is consequently ripe for review.

Finally, Howard County urges us to abstain under the principles of Burford v. Sun Oil Co., 319 U.S. 315 (1943), and its progeny. The county argues that this case is analogous to "the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials [which are] simply not the business of the federal courts." Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 828 (4th Cir. 1995) (quoting Gardner v. City of Baltimore, 969 F.2d 63, 67 (4th Cir. 1992)); see also Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319, 1328 (4th Cir. 1994) (en banc) ("[When] plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . . the district courts should abstain under the Burford doctrine to avoid interference with [local] . . . land use policy." (emphasis added)). This argument, however, fails to recognize that unlike our Burford cases, Bryant Woods Inn does not contest the interpretation of local law, but argues that a federal antidiscrimination statute requires the county to make accommodation to its properly interpreted zoning ordinance. Hence, we are not in danger of misapplying local laws because of the impossibility of unraveling the skein of federal claims and the interpretation of local law.

III

Howard County zoning regulations allow any resident family to house up to eight handicapped or elderly persons in its principal residence, provided state approval is obtained. See Howard County, Md., Zoning Regulations § 110.C.4.b. Group care facilities for more than eight persons are defined as nursing homes for which zoning approval is required. In connection with its application to change the zoning to house 15 handicapped or elderly residents, Bryant Woods Inn was unable to satisfy Howard County's traffic and parking requirements and therefore sought a waiver of the requirements on the ground that its residents would not need additional parking. Howard County denied the request. Bryant Woods Inn contends that Howard County's refusal to change its zoning for the Colandrea property to accommodate expansion from 8 to 15 residents violates the Fair Housing Act

9

("FHA"), as amended by the Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (adding handicap and familial status to list of impermissible bases of discrimination). The FHA, enacted pursuant to United States policy to provide for "fair housing throughout the United States," 42 U.S.C. § 3601, makes it unlawful, inter alia, to discriminate in the sale or rental of housing or otherwise to make housing unavailable to a buyer or renter because of that buyer's or renter's handicap or the handicap of certain persons associated with the buyer or renter. 42 U.S.C. § 3604(f). Discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Bryant Woods Inn contends that Howard County violated the statutory duty imposed by 42 U.S.C. § 3604(f) to make "reasonable accommodations" when it refused Colandrea's application to expand the use of his house from 8 to 15 disabled residents. To resolve this claim we must recognize and resolve the tension between Howard County's right to control land uses through neutral regulation and its duty to make reasonable accommodations for the handicapped under the FHA. In considering this tension, Congress adopted the concept of "reasonable accommodation," as developed in Rehabilitation Act cases such as Southeastern Community College v. Davis, 442 U.S. 397 (1979). See H.R. Rep. 100-711, at 18, 25, 28 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2179, 2186 & n.66. Accordingly, we may look to Rehabilitation Act cases to assist us in interpreting the FHA. See, e.g., Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1101 (3d Cir. 1996); Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 334 (2d Cir. 1995); United States v. California Mobile Home Park Management Co., 29 F.3d 1413, 1416-17 (9th Cir. 1994); Smith & Lee Assoc., Inc. v. City of Taylor, 13 F.3d 920, 930 (6th Cir. 1993).

Land use planning and the adoption of land use restrictions constitute some of the most important functions performed by local government. See, e.g., FERC v. Mississippi, 456 U.S. 742, 768 n.30 (1982) ("regulation of land use is perhaps the quintessential state activity"); Village of Belle Terre v. Boraas, 416 U.S. 1, 13 (1974) (Marshall, J., dissenting) ("[zoning] may indeed be the most essential function performed by local government"). Local land use restrictions seek to pre-

10

vent the problems arising from the proverbial "pig in the parlor instead of the barnyard," <u>Village of Euclid v. Ambler Realty Co.</u>, 272 U.S. 365, 388 (1926), and to preserve "the character of neighborhoods, securing `zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people,'" <u>City of Edmonds v. Oxford House, Inc.</u>, 514 U.S. 725, 732-33 (1995) (quoting <u>Village of Belle Terre</u> , 416 U.S. at 9). In <u>Euclid</u>, the Court upheld the constitutionality of local land use restrictions, observing that "apartment houses which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances" in residential neighborhoods of detached houses. <u>Euclid</u>, 272 U.S. at 395.

In enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to such local zoning codes. And the FHA does not provide a"blanket waiver of all facially neutral zoning policies and rules, regardless of the facts," <u>Oxford House, Inc. v. City of Virginia Beach</u>, 825 F. Supp. 1251, 1261 (E.D. Va. 1993), which would give the disabled "carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary," <u>Thorton v. City of Allegan</u>, 863 F. Supp. 504, 510 (W.D. Mich. 1993). Seeking to recognize local authorities' ability to regulate land use and without unnecessarily undermining the benign purposes of such neutral regulations, Congress required only that local government make "reasonable accommodation" to afford persons with handicaps "equal opportunity to use 4821 126 1 and enjoy" housing in those communities. 42 U.S.C.

§§ 3604(f)(3)(B).

The FHA thus requires an accommodation for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing. <u>See</u> 42 U.S.C. § 3604(f)(3). Because the FHA's text evidences no intent to alter normal burdens, the plaintiff bears the burden of proving each of these three elements by a preponderance of the evidence. <u>See Elderhaven, Inc. v. City of Lubbock</u>, 98 F.3d 175, 178 (5th Cir. 1996). <u>But see Hovsons</u>, 89 F.3d at 1103 (placing the burden of proving that a proposed accommodation is not reasonable on the defendant).

11

In determining whether the reasonableness requirement has been met, a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped. It may also consider whether alternatives exist to accomplish the benefits more efficiently. And in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs. "Reasonable accommodations" do not require accommodations which impose "undue financial and administrative burdens," Davis, 442 U.S. at 412, or "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program," Alexander v. Choate, 469 U.S. 287, 301 n.20 (1985) (internal quotations omitted). Thus, for example, even though a prohibition of pets in apartments is common, facially neutral, and indeed reasonable, the FHA requires a relaxation of it to accommodate a hearing dog for a deaf person because such an accommodation does not unduly burden or fundamentally alter the nature of the apartment complex. See Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995).

The "necessary" element -- the FHA provision mandating reasonable accommodations which are necessary to afford an equal opportunity -- requires the demonstration of a direct linkage between the proposed accommodation and the "equal opportunity" to be provided to the handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary." See Bronk, 54 F.3d at 429.

And finally, the "equal opportunity" requirement mandates not only the level of benefit that must be sought by a reasonable accommodation but also provides a limitation on what is required. The FHA does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap. As the Court in Davis noted, the requirement of even-handed treatment of handicapped persons does not include affirmative action by which handicapped persons would have a greater opportunity than nonhandicapped persons. Davis, 442

12

U.S. at 410-11. Congress only prescribed an equal opportunity. See 42 U.S.C. § 3604(f)(3)(B).

With this background in hand, we determine whether Bryant Woods Inn's request to expand its facility from 8 to 15 residents is a reasonable accommodation required by the FHA.

Bryant Woods Inn argues in this case that its requested zoning variance is reasonable because the expansion of its group home would not increase traffic congestion since its residents do not drive. Unrefuted testimony, however, was presented to the Howard County Planning Board by a member who observed vehicles parked "all over the place and also in the driveway" even under Bryant Woods Inn's current level of occupancy. The board also received unrefuted evidence that Bryant Woods Inn's wedge-shaped parcel affords minimal frontage and that the parcel is less than one-third of the size of other Howard County group homes which have 15 residents. Following a full public hearing where the board heard the evidence of all parties, the board found that "even the existing use generates parking congestion on the street. This situation would be exacerbated by Petitioner's proposed expansion." Bryant Woods Inn elected not to appeal the board's decision and is now bound by its findings on this point. Cf. Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997) (recognizing res judicata effect of factual findings of administrative agency). Thus, Bryant Woods Inn has failed, as a matter of law, to establish in this case that its requested accommodation is reasonable.

The more serious inadequacy of Bryant Woods Inn's position, however, appears in connection with its effort to show that its zoning change is "necessary." Howard County's existing zoning regulations do not prohibit group housing for individuals with handicaps. Indeed, the regulations permit such group housing. See Howard County, Md., Zoning Regulations § 110.C.4.b. Bryant Woods Inn houses 8 handicapped persons, and some 30 other facilities in Howard County similarly do so.

The zoning variance that Bryant Woods Inn seeks is not aimed at permitting handicapped persons to live in group homes in residential communities -- that, as we have noted, is already permitted -- but at expanding its group home size from 8 to 15 persons. While "some

13

minimum size may be essential to the success" of group homes, Brandt v. Village of Chebanse, 82 F.3d 172, 174 (7th Cir. 1996), the Inn has introduced no evidence that group homes are not financially viable with eight residents. On the contrary, the record before the board shows that almost 30 such homes operate viably in Howard County with 8 or fewer residents. Moreover, while it is uncontested that group homes are often therapeutically valuable in providing patients with a higher quality of life and thereby helping to avoid the functional decline which is frequently consequent to institutionalization in a traditional nursing home, see Erdman v. City of Fort Atkinson, 84 F.3d 960, 963 (7th Cir. 1996) (noting therapeutic value of group homes), Bryant Woods Inn has also presented no evidence in this case that expansion from 8 to 15 residents would be therapeutically meaningful. Thus, nothing in the record that we can find suggests that a group home of 15 residents, as opposed to one of 8, is necessary to accommodate individuals with handicaps. If Bryant Woods Inn's position were taken to its limit, it would be entitled to construct a 10-story building housing 75 residents, on the rationale that the residents had handicaps.

The only suggestion in the record of advantage from the proposed expansion is that it will financially assist Bryant Woods Inn as a for-profit corporation. But the proper inquiry is not whether "a particular profit-making company needs such an accommodation, but, rather do such businesses as a whole need this accommodation. Otherwise, by unreasonably inflating costs, one business would get such an accommodation while another, better run, did not." Smith & Lee Assoc., 13 F.3d at 931-32 (finding no need to accommodate expansion of a six-person group home).

A handicapped person desiring to live in a group home in a residential community in Howard County can do so now at Bryant Woods Inn under existing zoning regulations, and, if no vacancy exists, can do so at the numerous other group homes at which vacancies exist. The unrefuted evidence is that the vacancy rate was between 18 to 23% within Howard County. We hold that in these circumstances, Bryant Woods Inn's demand that it be allowed to expand its facility from 8 to 15 residents is not "necessary," as used in the FHA, to accommodate handicapped persons.

14

Were we to require Howard County to grant a zoning variance to allow Bryant Woods Inn to expand its group home from 8 to 15 residents without providing adequate parking and not to require the county to grant a similar waiver for group homes not involving handicapped persons, the benefit would advantage Bryant Woods Inn on a matter unrelated to the amelioration of the effects of a handicap. This would provide not an equal opportunity to Bryant Woods Inn's residents but a financial advantage to Bryant Woods Inn. Yet, the FHA only requires an "equal opportunity," not a superior advantage. Cf. Alexander, 469 U.S. at 309 (applying the Rehabilitation Act). In Alexander, the State of Tennessee modified its Medicare program -- to save taxpayer dollars -- by adopting a reduction in the compensable in-hospital care from 20 to 14 days per year. Handicapped claimants argued that the change would adversely affect 27.4% of their group while affecting only 7.8% of nonhandicapped persons. In concluding that Tennessee's facially neutral change in benefits did not discriminate against the handicapped in violation of the Rehabilitation Act, the Supreme Court stated, "The state has made the same benefit -- 14 days of coverage -- equally accessible to both handicapped and nonhandicapped persons, and the State is not required to assure the handicapped `adequate health care' by providing them with more coverage than the nonhandicapped." Alexander, 469 U.S. at 309 (emphasis added). The Court noted that the administrative cost of implementing a special regime for the handicapped"would be well beyond" the reasonable accommodations required. Id. at 308. We conclude that the same reasoning is applicable to the FHA.

In short, Bryant Woods Inn has failed to satisfy any of the three requirements imposed by the FHA for accommodation of the handicapped persons.

IV

On its cross-appeal, Howard County contends that the district court erred in refusing to award it, as the prevailing party, attorneys fees under 42 U.S.C. § 3613(c)(2), which provides that "the court, in its discretion, may allow the prevailing party . . . reasonable attorneys fees and costs." The district court concluded that because the FHA is a civil rights statute, prevailing defendants are to be treated differently from prevailing plaintiffs, even though the statutory language is neu-

15

tral. The district court, relying on <u>Hughes v. Rowe</u>, 449 U.S. 5 (1980) (per curiam) (construing 42 U.S.C. § 1988), and <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978) (construing § 706(k) of Title VII of the Civil Rights Act of 1964), stated:

> According to these Supreme Court decisions, a plaintiff who prevails under a civil rights statute that contains a fee-shifting provision "ordinarily is to be awarded attorneys fees in all but special circumstances," whereas a prevailing defendant may receive fees "only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." <u>Christianburg</u>, 434 U.S. at 417, 421.

Howard County argues that the recent Supreme Court decision in <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994), instructs that a fee-shifting statute that permits the award of attorneys fees to a prevailing party should be applied similarly to plaintiffs and defendants. That case addressed an application for attorneys fees under the Copyright Act where the Act made provision for attorneys fees to the prevailing party, in the discretion of the district court, using language substantially similar to that contained in the FHA. <u>Compare</u> 17 U.S.C. § 505 <u>with</u> 42 U.S.C. § 3613(c). The Supreme Court concluded that "prevailing plaintiffs and prevailing defendants are to be treated alike, but attorneys fees are to be awarded to prevailing parties only as a matter of the court's discretion." <u>Fogerty</u>, 510 U.S. at 534.

The difficulty with Howard County's argument is that the <u>Fogerty</u> Court itself recognized a policy for treating plaintiffs and defendants differently when awarding attorneys fees under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(k). It observed that the same policy did not apply in awarding fees under the Federal Copyright Act even though both acts utilize similar language. <u>See Fogerty</u>, 510 U.S. at 522-23. Acknowledging the distinction, however, Howard County argues that for the purpose of applying the distinction, the FHA is more similar to the Copyright Act than the Civil Rights Act of 1964 because the FHA applies "to a land use or zoning decision." While the decision in this case involves the refusal to waive a zoning regulation, it is not accurate to consider this a land use planning case. Instead, this is an FHA case. The FHA prohibits discrimination because of

16

"race, color, religion, sex, familial status, or national origin," as well as handicap. See 42 U.S.C. § 3604. We conclude that these proscriptions of the FHA draw on the same policies attending Title VII of the Civil Rights Act and that the district court was correct in applying the Christianburg standard in considering an application for attorneys fees under 42 U.S.C. § 3613(c)(2).

In disposing of the petition for attorneys fees, the district court considered the merit of Bryant Woods Inn's claims, observing that they were "not without foundation." The court noted that Bryant Woods Inn "cited numerous cases decided under the Fair Housing Act as authority for its litigation position." Although Bryant Woods Inn did not prevail, the district court concluded that "a reasonable legal basis existed for [Bryant Woods Inn's] initiation and pursuit of its action" and accordingly denied Howard County's claim for attorneys fees.

We hold that the district court applied the correct legal standard to its consideration of Howard County's petition for attorneys fees and that it did not abuse its discretion in denying them in this case.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

17