FILED
United States Court of Appeals
Tenth Circuit

**July 3, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

CINNAMON HILLS YOUTH CRISIS
CENTER, INC.,

        Plaintiff-Appellant,

v.

SAINT GEORGE CITY,

        Defendant-Appellee.

No. 11-4020

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:09-CV-00534-TC)**

Mary Anne Q. Wood (Kathryn O. Balmforth with her on the briefs), Wood
Jenkins, LLC, Salt Lake City, Utah, for Plaintiff-Appellant.

Daniel J. McDonald (J. Craig Smith and Kathryn J. Steffey with him on the brief),
Smith Hartvigsen, PLLC, Salt Lake City, Utah, for the Defendant-Appellee.

Before **MURPHY, HOLLOWAY,** and **GORSUCH,** Circuit Judges.

**GORSUCH**, Circuit Judge.

      For years Cinnamon Hills has run a residential treatment facility in St.

George, Utah for young people with mental and emotional disorders. Now, it

wants to expand its operations with a new "step-down" program. Participants

would live in a separate facility with more responsibility and autonomy than other students, all to help prepare them for reentry into society. Cinnamon Hills hopes to house its new operation on the top floor of the Ambassador Inn, a local motel it happens to own. At the same time, it wants to continue operating the ground floor as a motel open to the traveling public. Aware its unusual plan violates various city zoning ordinances, Cinnamon Hills sought a variance. When the city demurred, Cinnamon Hills brought this lawsuit alleging unlawful discrimination against the disabled. Unable to discern material facts suggestive of discrimination, the district court granted summary judgment to the city, a conclusion we ultimately find persuasive.

Cinnamon Hills's suit invokes three separate federal statutes: the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). Whatever the statutory rubric, though, everyone agrees that to avoid summary judgment Cinnamon Hills must present facts suggesting that the city either (1) intentionally discriminated against the disabled, (2) engaged in conduct that had an unlawful disparate impact on the disabled, or (3)

failed to provide a reasonable accommodation for the disabled.[1]  Accordingly, we organize our discussion around those theories and discuss each in its turn.

*Intentional Discrimination.*  There are two ways to prove intentional discrimination (or "disparate treatment"), and Cinnamon Hills attempts both. First, it says it has direct proof of the city's discriminatory intent.  *See Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 n.6 (10th Cir. 2001); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  Second, it points to circumstantial evidence and invokes the familiar *McDonnell Douglas* burden shifting scheme originally spawned in the Title VII arena but long since equally entrenched in the FHA, ADA, and RA contexts.  *See Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (FHA); *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir. 1997) (ADA); *Cummings v. Norton*, 393 F.3d 1186, 1189 n.1 (10th Cir. 2005) (RA).

For direct evidence of discrimination, Cinnamon Hills points to various restrictions in § 10-5-3 of the city code, restrictions requiring residential treatment centers to locate in rural areas (among other things).  Cinnamon Hills says the restrictions embodied in § 10-5-3 discriminate on their face against the

---

[1] *See Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007) (FHA); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188-89 (10th Cir. 2003) (ADA); *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 859-60 (10th Cir. 2003) (overruled on other grounds as recognized by *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 n.4 (10th Cir. 2012)) (RA covers disparate treatment and disparate impact claims); *Tesh v. U.S. Postal Service*, 349 F.3d 1270, 1275 (10th Cir. 2003) (RA prohibits failure to reasonably accommodate).

disabled.  But whatever else § 10-5-3 may be, it isn't *direct* evidence of discrimination against the disabled in *this* case.

Direct evidence of discrimination is evidence which, if believed, proves that the decision in the case at hand was discriminatory — and does so without depending on any further inference or presumption.  *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999) (overruled on other grounds as recognized by *Fye v. Okla. Corp. Com'n*, 516 F.3d 1217 (10th Cir. 2008)); *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).  So if a city zoning official explicitly relies on a discriminatory policy in making the challenged policy decision, or if he makes discriminatory comments about the disabled while explaining his basis for the contested decision, that is direct evidence of discrimination.  *See EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996).

But in this case, the city did no such thing.  It never invoked § 10-5-3 or its restrictions when rejecting Cinnamon Hill's request.  Neither has the city ever sought to rely on § 10-5-3 after the fact, during the course of this litigation.  Instead, the city has always and exclusively said its decision to deny the requested variance rested (and so was to stand or fall) on two distinct code provisions:  a rule limiting stays in motels to 29 days, codified at § 3-2P-3, and a rule against residential uses in a designated commercial (or "C-3") zone, codified at § 10-10-2.  And even Cinnamon Hills does not purport to identify anything

discriminatory about *those* rules, which make no mention of disabled persons, let alone discriminate against disabled persons on their face.

Because St. George did not rely upon § 10-5-3 in denying Cinnamon Hills's request, that provision can be at most "direct evidence of . . . bias" and not "direct evidence of discrimination." *Ramsey*, 907 F.2d at 1008. To use § 10-5-3 as evidence, Cinnamon Hills must rely on the inference that whatever animus towards the disabled is evident on the face of § 10-5-3 also infected the city's decision to deny the variance request at issue. And that logical leap places the evidence squarely in the indirect proof camp. *See Wiltel*, 81 F.3d at 1514 ("Statements which are merely expressions of personal opinion or bias do not constitute direct evidence of discrimination."); *Ramsey*, 907 F.2d at 1008. To be sure, none of this is to say indirect evidence is unpersuasive or irrelevant. It is merely to say plaintiffs seeking to craft their cases from indirect evidence must satisfy the elements of the *McDonnell Douglas* burden shifting regime, which the Supreme Court devised specifically to address cases involving evidence of that sort. *Id.* at 1007-08.

Turning to that question, we agree with the district court that the circumstantial evidence Cinnamon Hills does present is insufficient as a matter of law to satisfy the first step of *McDonnell Douglas*. At that first step, Cinnamon Hills bears the obligation of coming forward with a *prima facie* case of discrimination, a case that must include evidence suggesting the city denied the

variance *because of* the disability of Cinnamon Hills's residents. *Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999). To meet this burden, Cinnamon Hills must produce evidence suggesting that the city denied to it zoning relief granted to similarly situated applicants without disabilities. Or, if there are no similarly situated non-disabled applicants, Cinnamon Hills must show the circumstances surrounding the denial of the variance support a reasonable inference that the city would have granted to an applicant without disabilities the relief it denied Cinnamon Hills. *Id; see also Almond v. Unified School Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011) (explaining requirements for a *prima facie* case under Title VII); *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977).

We agree with the district court that Cinnamon Hills has failed to show a similarly situated group has been granted zoning relief remotely like the requested variance. In fact, the only relief the city has granted from the 29 day motel stay rule according to Cinnamon Hills itself is for law enforcement, emergency personnel, and 24-hour business caretakers. No one else, with or without a disability, is exempt. And we agree with the district court that "[n]o reasonable jury could conclude that law enforcement and emergency personnel [or motel caretakers] are similarly situated to disabled youth." D. Ct. Op. at 10. *Cf. Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995) (to show intentional discrimination against handicapped residents of group homes, plaintiff

was required to show "that group homes for the non-handicapped are permitted" in the city and are not subject to the same onerous requirements). To be sure, Cinnamon Hills points out that *some* people are allowed to live in C-3 zones: hospitals and nursing homes can locate there, and some buildings may be converted wholesale into condominiums. But there's no evidence the city has ever allowed hospitals, nursing homes, or condominiums to open up for business on the top floor of an operating motel in violation of the 29 day rule. Without that, Cinnamon Hills lacks evidence that others have been granted the relief it was denied.

Neither has Cinnamon Hills presented evidence suggesting a reasonable likelihood that the city would grant a group of non-disabled applicants the relief it denied in this case. Cinnamon Hills argues that several other residential treatment facilities faced obstacles to establishing operations within St. George. But it fails to mention the city ultimately approved most of those facilities. *See* ROA at 549, 552. Alternatively, Cinnamon Hills cites a limited number of statements by city officials expressing concern that too many residential youth facilities exist in the city. Some of these officials, however, had no known role in the variance decision in this case. Some of the statements are fifteen or more years old. Such general statements suggesting bias, unattached to the variance at issue and made long ago, bear at best limited probative inferential value under our

precedents. *See Turner v. Pub. Serv. Co. of Colo.* 563 F.3d 1136, 1144-45 (10th Cir. 2009).

The same sort of problem recurs when Cinnamon Hills redirects our attention to § 10-5-3 and its relegation (absent variance) of new treatment facilities to rural areas. Even under *McDonnell Douglas* and at its first step Cinnamon Hills must show some causal "nexus" between evidence of general bias like that ostensibly reflected in § 10-5-3 and the challenged decision at issue in this case. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000); *Butler*, 172 F.3d at 748. And this it has not done. As we have already seen, the record shows the city never relied on § 10-5-3 when denying the requested variance but chose to rest its decision and have it upheld or overturned on entirely other grounds. The evidence shows as well that the grounds the city *did* rely on (the 29 day rule and C-3 zoning restrictions) have been applied equally to those with and without disabilities. In fact, the record reveals that the most similarly situated non-disabled comparators Cinnamon Hills has identified are also categorically excluded from C-3 commercial zones: boarding schools and housing for colleges and trade schools open to the non-disabled, no less than residential treatment programs for the disabled, cannot locate there. St. George City Code § 10-5-2.[2] In light of all this, we agree with the district court that the

---

[2] The record identifies only two student apartments within the commercial zone. These were approved over ten years ago under a different city code and are

(continued...)

- 8 -

record does not support a reasonable inference that the city would have granted to non-disabled persons the particular and surely unusual relief of allowing a residential youth program on the top floor of an operating motel in a C-3 zone. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216-17 (11th Cir. 2008) ("[E]vidence that neighbors and city officials are biased against recovering substance abusers" fails to make out a prima facie case "absent some indication that the recoverers were [or would have been] treated differently than non-recoverers").[3]

---

[2](...continued)
allowed to operate today as pre-existing nonconforming uses. *See* ROA at 554.

[3] During oral argument, Cinnamon Hills suggested that its lawsuit included a challenge not just to the city's variance decision in this case but also to the facial validity of § 10-5-3. To the extent that this claim is properly before us, it isn't ripe for judicial review. Ripeness doctrine seeks to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dep't. of Interior*, 538 U.S. 803, 807 (2003) (quotation omitted); *see also Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). While there's nothing premature about deciding whether the city's zoning decision on the Ambassador Inn was or was not unlawful, to the extent Cinnamon Hills is worried that the city *might* invoke § 10-5-3 to deny *future* applications from it aiming to expand at *other* locations, that does not present a "direct and immediate dilemma." *Morgan*, 365 F.3d at 891 (quotation omitted). If and when Cinnamon Hills seeks to expand elsewhere and encounters difficulty doing so because of the provisions of § 10-5-3, we may need to pass upon its validity. But it is equally possible that Cinnamon Hills might choose not to expand, that it might choose to expand in places and ways that comply with § 10-5-3, or that the city might choose to waive that rule's requirements. Whether § 10-5-3 may ever come into play, then, depends on "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quotation omitted).

*Disparate Impact.* Unlike a claim for disparate treatment, a claim for disparate impact doesn't require proof of intentional discrimination. *Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1252 (10th Cir. 1995). Even so, it has challenges of its own. To prove a case of disparate impact discrimination, the plaintiff must show that "a specific policy caused a significant disparate effect on a protected group." *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229 (10th Cir. 2007) (quotation omitted). This "is generally shown by statistical evidence . . . involv[ing] the appropriate comparables" necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors. *Mountain Side Mobile Estates*, 56 F.3d at 1253.

The district court held that Cinnamon Hills has produced no evidence of disparate impact, and again we agree. Cinnamon Hills offers no formal statistics or other evidence that might serve that need. It points again to the 29 day rule's exception for law enforcement, and the limited exceptions we've already identified to the ban on residences in C-3 zones. But even putting aside whether the individuals covered by these exceptions are meaningful comparators, Cinnamon Hills faces a more fundamental problem. It has not identified any evidence that disabled individuals are less able to avail themselves of these exceptions than the non-disabled. And of course without evidence of a *disparity*,

- 10 -

Cinnamon Hills cannot make out a disparate impact claim.  *See Reinhart*, 482 F.3d at 1230.

*Failure to Accommodate*.  A claim for reasonable accommodation is yet a different sort of animal.  It does not require the plaintiff to prove that the challenged policy intended to discriminate or that in effect it works systematically to exclude the disabled.  Instead, in the words of the FHA, a reasonable accommodation is required whenever it "may be *necessary* to afford [a disabled] person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B) (emphasis added).

What does it mean to be "necessary"?  The word implies more than something merely helpful or conducive.  It suggests instead something "indispensable," "essential," something that "cannot be done without."  Oxford English Dictionary, vol. X at 276 (2d ed. 1989).  What's more, the FHA's necessity requirement doesn't appear in a statutory vacuum, but is expressly linked to the goal of "afford[ing] . . . equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  And this makes clear that the object of the statute's necessity requirement is a level playing field in housing for the disabled.  Put simply, the statute requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without.  *See Bryant*

*Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 605 (4th Cir. 1997); *Schwarz*, 544 F.3d at 1227.

Of course, in some sense *all* reasonable accommodations treat the disabled not just equally but preferentially. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397-98 (2002). Think of the blind woman who obtains an exemption from a "no pets" policy for her seeing eye dog, or the paraplegic granted special permission to live on a first floor apartment because he cannot climb the stairs. But without an accommodation, those individuals cannot take advantage of the opportunity (available to those without disabilities) to live in those housing facilities. And they cannot *because* of conditions created by their disabilities. These examples show that under the FHA it is sometimes necessary to dispense with formal equality of treatment in order to advance a more substantial equality of opportunity. And that is precisely the point of the reasonable accommodation mandate: to require changes in otherwise neutral policies that preclude the disabled from obtaining "the *same . . . opportunities* that those without disabilities automatically enjoy." *Id.* (second emphasis added).

But while the FHA requires accommodations necessary to ensure the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities. The law requires accommodations overcoming barriers, imposed by the disability, that prevent the disabled from obtaining a housing opportunity others can access. But when there is no

- 12 -

comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense. So, for example, a city need not allow the construction of a group home for the disabled in a commercial area where nobody, disabled or otherwise, is allowed to live. *See Bryant Woods Inn*, 124 F.3d at 604; *Wisconsin Cmty. Serv., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) (en banc); *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 152 (2d Cir. 1999).

And recognizing this necessarily marks the end of the road for Cinnamon Hills's reasonable accommodation request. As we have already seen, no one, disabled or otherwise, is generally allowed to stay in a motel for more than 29 days or to reside in a C-3 commercial zone. To be sure, and as we have also seen, the city provides some limited exceptions to these rules (for law enforcement personnel and the like). But there is no evidence that the disabled, *because of* their disabilities, are any less able to take advantage of these exceptions than the non-disabled. Instead, the evidence shows that in seeking to occupy the top floor of a motel in a commercial zone, Cinnamon Hills is seeking an opportunity that isn't available to others rather than one that is. And that's a result the statute does not compel.

Cinnamon Hills does not so much dispute this analysis on its own terms as to ask us to adopt an entirely different and more lenient legal standard. In its

view, an accommodation should be held "necessary" anytime it would "provide[] direct amelioration of a disability's effect." Aplt. Br. at 54 (quoting *Bryant Woods Inn*, 124 F.3d at 604). And in this sense, Cinnamon Hills argues, the step-down facility is "necessary" because it would ease the transition of emotionally and mentally troubled youth from residential treatment back into society.

This interpretation, however, overlooks the statute's language linking a defendant's accommodation obligations to the goal of providing "equal opportunity to enjoy a dwelling." On Cinnamon Hills's view, defendants would be required to ameliorate *any* effect of a disability — even if doing so only affects the disabled person's chances of getting a job or playing a sport and has nothing to do with enjoying a home. Under Cinnamon Hills's reading, the Fair Housing Act would require landlords not just to accommodate disabilities affecting housing opportunities but to operate as a sort of clinic seeking to cure all ills. And that is not what the text or purpose of this statute requires.

What's more, the cases from which Cinnamon Hills purports to extract its "amelioration" test actually hurt, not help, its cause. The primary case Cinnamon Hills relies on expressly holds that it is not just amelioration of *any* effect of the disability that demands accommodation, but only amelioration of those effects which preclude the disabled individual from availing himself of an otherwise available housing opportunity. *See Bryant Woods Inn,* 124 F.3d at 604. The other two cases Cinnamon Hills hangs its hat on are Seventh Circuit cases that

were about the "reasonableness" rather than the "necessity" requirement found in the FHA. And to whatever extent they might support Cinnamon Hills's argument they have been supplanted by the *en banc* court's decision in *Wisconsin Community Services*, which is entirely consistent with our disposition. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995); *Dadian v. Village of Wilmette*, 269 F.3d 832, 838 (7th Cir. 2001).[4]

So it is that, in the end and after independent examination of the record and the law and each of the plaintiff's three theories of relief, we find ourselves in agreement with the district court's disposition and conclude as a matter of law Cinnamon Hills has failed to adduce evidence sufficient to withstand summary judgment. The judgment of the district court is affirmed.

---

[4] We pause to note that in briefing the reasonable accommodation inquiry, the parties have relied only upon case law interpreting the FHA alone. If the RA or the ADA embrace a different standard than the FHA, no one has suggested it to us. As a result, we decline to address the issue. Likewise, given the dispositions we have reached there is no need for us to consider the various alternative grounds the city has offered for affirming the district court's disposition.