63 A.3d 1064

## BOARD OF DIRECTORS OF CAMERON GROVE CONDOMINIUM, II, et al.

v.

## STATE of Maryland COMMISSION ON HUMAN RELATIONS.

No. 47, Sept. Term, 2012.

Court of Appeals of Maryland.

March 28, 2013.

David C. Gardner, (Gardner Law Firm, P.C., Rockville, MD), on brief, for Petitioner.

Terrence J. Artis, (Glendora C. Hughes, State of Maryland Commission on Civil Rights, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

This judicial review action under Section 32(h) of Article 49B of the Maryland Annotated Code (1957, 1998 Repl.Vol.),[1] involves the interpretation of Section 22 of Article 49B of the Maryland Annotated Code [2] as to the proper apportionment of the burden of proving the cost of a disability accommodation under a reasonableness standard. Arguing in administrative proceedings before the Maryland Commission on Human Relations (Commission),[3] Peggy Daniel and Albert Doby, dis-

---

1. Under Section 32(h), "any party aggrieved by a final order for relief under this section may obtain a review of the order in accordance with the provisions for judicial review" under Title 10, Subtitle 2 of the State Government Article. Section 32(h)(1) of Article 49B of the Maryland Annotated Code. Section 10–222 of the State Government Article of the Maryland Code states that generally "a petition for judicial review shall be filed with the circuit court for the county where any party resides or has a principal place of business." Section 10–222(c) of the State Government Article of the Maryland Code. The final order was issued by the Appeal Board, and, thus, our review is of that decision. *State Commission on Human Relations v. Anne Arundel County,* 106 Md.App. 221, 224–27, 664 A.2d 400, 402–04 (1995) (explaining the process by which the Commission operates and that, while an administrative law judge issues provisional decisions, the Appeal Board issues a final decision from which judicial and, thereafter, appellate review can be taken).

2. Section 22(a)(9) of Article 49B of the Maryland Annotated Code states that it is unlawful "[t]o refuse to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford a handicapped individual equal opportunity to use and enjoy a dwelling[.]" This Section was recodified without substantial change in 2009 as Section 20–706(b)(4) of the State Government Article of the Maryland Code (2009). 2009 Md. Laws, Chap. 120. Because the operative statute at the time of the denial of the requested accommodation was Section 22(a)(9) of Article 49B, we shall continue to refer to that statute.

3. The Maryland Commission on Human Relations was renamed as the Maryland Commission on Civil Rights after the inception of this case. 2011 Md. Laws, Chap. 580.

abled residents of Cameron Grove Condominium II, a condominium located in a retirement community for people 55 years of age and older in Prince George's County, pursued their complaints that the Board of Directors of Cameron Grove II (Cameron Grove) and their property management company, H & E Management, Ltd.,[4] had discriminated against them by refusing to grant a reasonable accommodation for their disabilities. Specifically, Ms. Daniel and Mr. Doby alleged that Cameron Grove refused to provide keys to the side and back doors to their building to permit them to more fully use and enjoy their dwellings.

Ms. Daniel and Mr. Doby filed complaints with the Commission in 2006, alleging that Cameron Grove had refused to accommodate their disabilities.[5] After the Commission reviewed the complaints and certified that there was probable cause to believe that Cameron Grove had discriminated against the complainants, the case was assigned to an administrative law judge from the Office of Administrative Hearings (OAH).[6] The administrative law judge ruled that Ms. Daniel and Mr. Doby had not proven that giving them keys to the side and back doors was necessary and reasonable. An Appeal Board of the Commission (Appeal Board or Board), however, disagreed and issued a final decision in which the Board determined that Cameron Grove was required to prove that giving Ms. Daniel and Mr. Doby keys was an unreasonable financial burden and that Cameron Grove had failed to

---

**4.** H & E Management Ltd. was dismissed as a party by the administrative law judge who heard the matter; this issue is not before us.

**5.** Under Section 27(a)(1)(i) of Article 49B of the Annotated Code of Maryland, "[a]n aggrieved person may file, not later than 1 year after an alleged discriminatory housing practice has occurred or terminated, a complaint with the Commission alleging the discriminatory housing practice."

**6.** Under Section 32(b)(2) of Article 49B of the Annotated Code of Maryland, if the Commission finds that there is probable cause to believe that there has been a violation of the Discrimination in Housing statutes and the complainant elects not to pursue a private civil suit, "[t]he Commission shall delegate the conduct of a hearing under this subsection to the Office of Administrative Hearings."

establish that giving the complainants keys presented "an undue burden" or necessitated "substantial or impracticable changes." On judicial review,[7] a circuit court judge disagreed with the Board's determination and remanded the matter to the Appeal Board to reconsider the issues in light of his burden allocation, which was that Ms. Daniel and Mr. Doby should have been required to prove reasonableness. The Court of Special Appeals vacated, before the Board acted on the decision of the circuit court judge. Cameron Grove then petitioned this Court for certiorari, which we granted, 427 Md. 605, 50 A.3d 605 (2012), to consider the following questions:

1. Whether the Agency erred by requiring that the Petitioner show evidence that thieves and vandals had gained illegal entry to the building before it could prohibit keys from being distributed to doors which were not secure?

2. Whether the Agency erred by failing to perform the balancing test required by the Maryland reasonable accommodation statute?

3. Whether the Agency erred by ignoring the Planning Board's Specific Design Plan, which required that a security system be installed on the doors in question?

We shall hold that Cameron Grove was required to prove that providing keys to Ms. Daniel and Mr. Doby was unreasonable in light of the costs attendant in doing so, that the Appeal Board properly performed the requisite balancing test when it concluded that Cameron Grove unreasonably denied Ms. Daniel's and Mr. Doby's requests to be given keys to the side and back doors of their building, and that there is substantial evidence to support the Board's conclusion.

Central to our discussion is the fact that, under Section 22(a)(9), it is unlawful "[t]o refuse to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford a handicapped

---

7. Cameron Grove filed a motion to Stay the Decision of the Appeal Board, but it was denied by the Circuit Court Judge hearing the judicial review action.

individual equal opportunity to use and enjoy a dwelling." The accommodation in issue was providing keys to the side and back doors of the condominium building in which Mr. Doby and Ms. Daniel lived, as an accommodation necessary to allow them to access the facilities, including a Resort Center that offered various activities, and to carry out their daily activities, such as bringing in groceries: [8]

> Complainants Doby and Daniel moved into Cameron Grove II in 2004 and 2001 respectively. Complainants are disabled. Due to not having keys (and therefore no access) to doors close to their units (side/back doors), Complainants in their disabilities encountered difficulties in gaining access to their homes and in traversing to and from the community in carrying out daily activities. They were forced to travel greater distance than they otherwise would have with keys to the side/back doors. As their disabilities were painful and greatly limited physical mobility, they were limited in carrying out daily activities requiring traversing the community. They began requesting keys verbally from [Cameron Grove] shortly after moving in. In 2006, they submitted written requests with physician statements affirming that the requested keys would help them in their disabilities.

Cameron Grove denied their requests, asserting that giving Mr. Doby and Ms. Daniel keys would be a safety hazard, that the doors themselves were heavy and dangerous for the residents to use and that installing passcard systems and

---

8. While the Board did not specifically mention the issues of bringing in groceries or accessing the Resort Center, the administrative law judge, in her findings adopted by the Board, explained that the Commission argued that "Complainant Daniel needs the key to the side door to enable her to be better able to unload her groceries into her apartment and because it would allow her a much shorter access route to the Resort Center." With respect to Mr. Doby, the administrative law judge noted that the Commission argued "that he needs the loading dock door key because it will allow him to more efficiently unload his groceries." The administrative law judge made 144 numbered findings of fact, all of which, except where noted, were adopted by the Board. We only shall refer to those findings adopted by the Board that are relevant to the present case, however.

safety doors at the requested locations would cost almost $19,000:

> [Cameron Grove] denied their requests based on security and cost concerns. Several acts of vandalism had occurred on the property. [Cameron Grove] maintained that as any key could be duplicated, provision of a key to two residents would undermine its legitimate interest in ensuring the safety of its residents. Additionally, [Cameron Grove] argued that as the side/back doors had no windows and were very heavy, allowing free ingress and egress presented a safety hazard as persons could inadvertently push the doors into each other causing injury. It also maintained that installing a security and pass code system to allow for access to the side/back doors cost approximately $18,900.00 according to estimates it obtained.

With respect to the ruling of the administrative law judge that the complaints should have been dismissed, the Board determined that the administrative law judge erred:

> Turning to what the ALJ termed as "THE MERITS" portion of her decision, this Board holds that the ALJ erred in finding that the Appellees' "denial of Complainants' requests for keys to the side and loading dock doors did not constitute a refusal to make reasonable accommodations in the rules, policies, practices, or services necessary to afford the Complainants equal opportunity to use and enjoy their dwellings in violation of subsection (9) of [s]ection 22(a) of Article 49B."

The Appeal Board considered two issues on appeal:

> (1) Whether the ALJ erred in concluding that Appellees' refusal of the Appellants' request for keys to the side/back doors of their condominium building did not violate Article 49B of the Annotated Code of Maryland.
>
> (2) Whether the Statement of Charges is moot because Respondent has now provided the keys originally requested by Complainants to all residents of Cameron Grove II.

The Board began its discussion of the issues by setting forth the elements of proving whether an accommodation was im-

properly refused, noting that, under the Federal Fair Housing Act, Sections 3600 et. seq. of Title 42 of the United States Code (2006),[9] an accommodation is required to be made "if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." The Board utilized the framework articulated by the United States Court of Appeals for the Fourth Circuit in *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597 (4th Cir.1997) and concluded that "furnishing the keys did not present undue financial burdens or requirements of substantial or impracticable changes" and was, therefore, a reasonable accommodation. The Appeal Board dismissed Cameron Grove's argument that granting the accommodation was too costly:

A. The ALJ Incorrectly Concluded that the Accommodation Was Not Reasonable

In *Bryant Woods Inn, Inc. v. Howard County, MD*, 124 F.3[d] 597 (4th Cir.1997) the Court enunciated a two-part test for determining whether an accommodation for disabled persons was required. The court stated that the FHA requires an accommodation for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing. *Bryant Woods* at 603. Providing the keys was a reasonable accommodation because furnishing the keys did not present undue financial burdens or requirements of substantial or impracticable changes.

The Board noted that Cameron Grove's assertion that granting Mr. Doby's and Ms. Daniel's requests would require the installation of a security system, at a cost of almost $19,000, was not sufficient to show that the requested accom-

---

9. Section 3604(f)(3)(B) of Title 42 of the United States Code states that "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," constitutes housing discrimination. Section 22(a)(9) contains language that is nearly identical to Section 3604(f)(3)(B), as explained *infra*.

modation was unreasonable. Cameron Grove had argued that the Specific Design Plan, created when the Cameron Grove Condominium Complex was contemplated, required that all entrances and exits be equipped with security systems.[10] The Board determined, however, the security and passcard systems were not requests made by the complainants; rather, Ms. Daniel and Mr. Doby had requested only keys to the side and back doors, the cost of which would have been insubstantial:

> As to [Cameron Grove]'s contention that furnishing keys would have been too costly given their budget, the Complainants requested their own keys, not installation of a security and pass code (for all residents, non-disabled included) system requiring thousands of dollars. On the contrary, providing the keys was feasible and practical under the circumstances. [Cameron Grove] had considered a bid totaling $18,900 to install a pass card and/or security system at the side/back doors. Installation of a security system with pass card issuance for all residents is not what the Complainants had requested. The Complainants in their disabilities simply needed their own keys to the side/back doors to assist their mobility. It was error for [Cameron Grove] to refuse to relax its "no key" policy for issuance of keys to the Complainants. The costs to [Cameron Grove] of providing the Complainants with their own keys was negligible as [Cameron Grove's] President in her testimony revealed that she did already in fact have keys to the side/back doors. Additionally, recently all residents have been provided keys at no additional cost to the side/back doors.

The Appeal Board also found three errors made by the administrative law judge. The Board noted that security concerns the administrative law judge found significant—the

---

10. As found by the administrative law judge, "[t]he [Specific Design Plan] states that residents should receive "pass cards" for the front door and side doors for each condominium building. The [Specific Design Plan] also states that all entry doors will have alarms monitored by a video camera and a security service."

heaviness of the side and back doors and the increased vulnerability of the building to security breaches by virtue of increased access—were not so substantial as to render the accommodation unreasonable. The Board explained that the concerns about the safety of the doors could have been met by posting signs or issuing warnings and that, since the doors were now in use by all residents by virtue of the passcard system that was installed, those concerns had been met.

The Board also found that the concern that Cameron Grove would have been more vulnerable to security breaches by issuing additional keys was not supported by the evidence, stating that there was no connection between giving out keys and vandalism that had been cited as a concern, and that there was no evidence that previous security breaches had been caused by nonresidents. Finally, the Board found that the administrative law judge's conclusion that, because the accommodation would provide only minimal relief to Mr. Doby and Ms. Daniel, the complainants had failed to show that the requested accommodation was reasonable, was not supported by the evidence. In that regard, the Board stated, "even where the link between the need for an accommodation and the ameliorative effects it would provide is weak, a defendant needs to show that the request is unreasonable in light of a facially neutral and legitimate policy," citing *Bronk v. Ineichen*, 54 F.3d 425 (7th Cir.1995):

The ALJ accepted as valid [Cameron Grove]'s argument that the key request was unreasonable because the side and back (loading dock) doors were not sufficiently equipped to serve as exits/entrances. [Cameron Grove] argued that as the doors had no windows and were very heavy, allowing them to be used for exiting and entering would create a safety hazard: that the person using the door might inadvertently injure someone on the other side due to lack of visibility and the weight of the doors. This concern could have been addressed by posting warning signs to direct persons to use caution when opening the doors. Additionally, the Complainants, not all residents, due to the extenuating needs which their disabilities presented, were the ones

who would have been using the doors. Therefore, there should not have been any concern about regular flow of traffic of persons entering and exiting through those doors. Finally, as [Cameron Grove] has since furnished keys to the doors in question, [Cameron Grove] presumably found ways to adequately meet those safety concerns.

The ALJ concluded that [Cameron Grove]'s position—that furnishing keys to Daniel and Doby would make Condo II "even more vulnerable to breaches in its safety from individuals who are not residents"—was correct. This conclusion is not supported by the evidence of record. The vandalism of the cars involved no entry to Condo II. There is no evidence that these and the other above cited incidents were not perpetrated by residents or guests of residents. Additionally, even if non-residents had committed the acts, there was no evidence that they had obtained entry to Condo II by the side/back doors. There was no connection between Daniel and Doby having keys and any unauthorized entry. Further, any misuse of the keys could have been guarded against by imposition of penalties and warning signs to residents placed on the doors in question.

The ALJ found that any amelioration of the Complainants' disabilities provided by the key accommodation was minimal. Her conclusion is not supported by the evidence. As the Commission points out, the court in *Bronk v. Ineichen*, 54 F.3d 425 (1995) found that even where the link between the need for an accommodation and the ameliorative effects it would provide is weak, a defendant needs to show that the request is unreasonable in light of a facially neutral and legitimate policy. [Cameron Grove] failed to show that providing Complainants with a key was unreasonable as other condos routinely furnished keys, and the purpose of the "no key" policy (safety concerns) of [Cameron Grove] could have been achieved by less restrictive means such as placing safety warnings on the doors and imposing penalties on individuals who misused the keys. Finally, [Cameron Grove] did not present any alternative

that would have afforded Appellants the accommodation that keys would have.

After determining that the accommodation was also necessary [11] and that issues were not rendered moot by the installation of a security door after the commencement of the case, the Appeal Board ordered Cameron Grove to pay $25,000 to Ms. Daniel and $10,000 to Mr. Doby for their pain and suffering, as well as a $5,000 civil penalty. The Appeal Board further ordered that neither Mr. Doby nor Ms. Daniel could be assessed any costs of paying the damage awards or penalty:

## ORDER

Having reviewed the entire record of proceedings in this matter, and having considered and decided all of the issues raised on this appeal, it is the 24th day of September 2009, by a Board of Appeals of the Maryland Commission on Human Relations it is hereby

**ORDERED,** that the Administrative Law Judge's Proposed Decision dated October 3, 2008, be reversed for the reasons set forth herein, and it is further

**ORDERED,** [Cameron Grove] pay the amount of $25,000.00 to Complainant Peggy A. Daniel and $10,000.00 to Complainant Albert C. Doby as actual damages, in addition to interest at the legal rate, to be paid, from the date of this Order, pursuant to the Courts and Judicial Proceedings Article; and it is further

---

11. Cameron Grove did not seek certiorari on whether the requested accommodation was necessary to afford the handicapped individuals an equal opportunity to use and enjoy their dwellings, and thus we do not review that issue. The issue of mootness is not implicated by Cameron Grove's providing access to the side and back doors. The harm found by the Appeal Board was Cameron Grove's denial of providing keys from 2006 until the passcard system was installed in 2008; the installation of the passcard system had no bearing on the harm suffered by Ms. Daniel and Mr. Doby, which is the subject of this action.

**ORDERED,** [Cameron Grove] pay the amount of $5,000.00 in civil penalty to the General Fund of the State of Maryland.

**ORDERED,** the Complainants are to be exempted from any assessment that [Cameron Grove] may implement to satisfy the fines and awards entered herein.

After Cameron Grove petitioned for judicial review of the Board's decision, a judge in the Circuit Court for Prince George's County ruled that the Appeal Board had committed various errors of law, but more specifically to the present action, that the Appeal Board improperly had shifted the burden of proof to Cameron Grove to prove the unreasonableness of the requested accommodation and failed to articulate its consideration of the Specific Design Plan when balancing the safety concerns against the accommodations being sought:

[M]uch of the decision of the Commission is supported by substantial evidence, however, there are some deficiencies in that decision which will require a remand to the Commission on Human Relations. Specifically, number one, the fines. I find that the Commission, while it's justified in doing what it does and is justified and can do what they want to do, they need to articulate as to the fines. They need to specifically, pursuant to COMAR ... in a civil financial penalty, they shall consider the seriousness of the violation, the good faith of the violation, later, the harmful effect of the violation on the public or harmful effect of the violator's actions on the investigatory process of the Commission on Human Relations and, fourth, which is the most important thing that I find is a deficiency, the assets of the violator. So I have to remand it for that purpose alone for that determination.

However, there are other reasons to remand it. I do find that there was an error of law that they need to specifically address. They may find the same thing, but they need to address it in a way in which they show that they have not allocated the burden of proof to [Cameron Grove]. That is, they have to show and have to tell a consideration of the allocation of the burden of proof, a balancing test, more specifically, in their determination as to protect the safety of

the entire community, that is the entire community of Cameron Grove. They have to address does the actions of giving these two individuals keys undermine the legitimate safety concerns of the community as to Cameron Grove.

Furthermore, I find it as an error of law that they did not consider ... or give some consideration to the Planning Board's specific design plan in this situation, SDP–9802. Specifically, they can find, if they so desire, that the Board of Cameron Grove ... was negligent for failing to adhere to and follow the specific design plan, because had they followed the specific design plan in the beginning, we would not be here. But they have to balance that, they have to look at that, and they decided not to do so, and I believe that they have to do that in their consideration.

The Commission appealed, and the Court of Special Appeals vacated the judgment of the Circuit Court, agreeing with the determination of the Appeal Board that Cameron Grove had unlawfully discriminated against Ms. Daniel and Mr. Doby.

■ Cameron Grove asks us to determine which party, the complaining or the defending, should be required to prove that a requested accommodation is reasonable under Section 22(a)(9), which states that it is unlawful to "[r]efuse to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford a handicapped individual equal opportunity to use and enjoy a dwelling."

Neither the language of Section 22(a)(9) nor its legislative history give guidance as to who must prove whether a requested accommodation is reasonable. In determining the appropriate burden allocation, it is, however, appropriate to review federal cases interpreting the Federal Fair Housing Act, Section 3600 et. seq. of Title 42 of the United States Code (2006), which contains language nearly identical to that in Section 22(a)(9):

Section 22(a)(9): It is unlawful "[t]o refuse to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford a handicapped individual equal opportunity to use and enjoy a dwelling."

Section 3604(f)(3)(B): Unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling."

In interpreting what constitutes reasonable accommodations in a disability context, federal courts that have addressed the issue are divided with respect to the issue of which party must prove reasonableness. The Second, Third, Seventh, Eighth, Ninth, and Tenth Circuits have interpreted disability statutes to require the defending party to prove that a requested accommodation is not reasonable, while the Fourth, Fifth and Sixth Circuits require the complaining party to prove that an accommodation is reasonable.

In this regard, the Court of Appeals for the Fourth Circuit, in *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597 (4th Cir.1997) required the complaining party to prove reasonableness. In that case, the Fourth Circuit was called upon to decide whether a zoning variance that had been denied should have been granted to accommodate a greater number of disabled residents in a group home in Howard County under the Federal Fair Housing Act. Bryant Woods Inn, desirous of expanding its group home for disabled individuals from eight residents to fifteen, needed a variance from Howard County to do so. After being denied such a variance, Bryant Woods Inn sued Howard County under the Federal Fair Housing Act, claiming the County had failed to make a reasonable accommodation to assist them with providing housing options to those with disabilities.

In affirming the denial, the Fourth Circuit held that Bryant Woods Inn had failed to prove that the accommodation was necessary and reasonable and was explicit that it was the complaining party that had to establish reasonableness:

The [Fair Housing Act] thus requires an accommodation for persons with handicaps if the accommodation is (1) reason-

able and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing. Because the [Fair Housing Act]'s text evidences no intent to alter normal burdens, the plaintiff bears the burden of proving each of these three elements by a preponderance of the evidence. *Id.* at 603–04 (internal citation omitted).

The United States Court of Appeals for the Fifth Circuit also concluded that it is the complaining party that must prove reasonableness. *Elderhaven, Inc. v. City of Lubbock,* 98 F.3d 175 (5th Cir.1996). In *Elderhaven,* the Fifth Circuit was called upon to resolve whether Elderhaven, a corporation formed for the purpose of providing living arrangements for disabled adults, had been appropriately denied an exemption to allow more residents to live at property owned by the corporation. Under the local zoning ordinance, a special permit was required to house more than four disabled adults. Elderhaven had sought a permit to allow twelve residents to live in the home in question but was granted a permit for only ten, which precipitated its suit. The district court judge granted summary judgment to the City, reasoning that Elderhaven had not proved it was denied a reasonable accommodation. The Fifth Circuit affirmed, noting that it was Elderhaven. that bore the burden of proving the proving reasonableness: "[i]nitially, we reject the suggestion of certain courts that a Fair Housing Act defendant bears the burden of proof on the question of reasonableness. The text of the Fair Housing Act provides no hint that Congress sought to change the normal rule that a plaintiff bears the burden of proving a violation of law by a preponderance of the evidence." *Id.* at 178 (internal citation omitted). *See also Groner v. Golden Gate Apartments,* 250 F.3d 1039, 1045 (6th Cir.2001) ("[T]he plaintiff in a Fair Housing Act case has the burden of proof to establish the reasonableness of a proposed accommodation.").

By contrast, in *Oconomowoc Residential Programs, Inc. v. City of Milwaukee,* 300 F.3d 775, 783–84 (7th Cir.2002), the Court of Appeals for the Seventh Circuit addressed the allocation of the burden of proving reasonableness, when deciding

whether a requested variance in local zoning laws was properly denied. The Seventh Circuit ruled that the complaining party had to show that the requested accommodation was reasonable on its face, but that the defending party ultimately had to bear the burden to prove that the accommodation was unreasonable: "The burden is on the plaintiffs to show that the accommodation it seeks is reasonable on its face. Once the plaintiffs have made this prima facie showing, the defendant must come forward to demonstrate unreasonableness or undue hardship in the particular circumstances." *Id.* at 783 (internal citation omitted). When addressing the argument that the reasoning of the Fourth and Fifth Circuits allocated the burden solely on the complaining party, the Seventh Circuit abjured and stated:

> The City argues that the plaintiffs bear the burden of proof with respect to the issue of reasonable accommodation, citing both the Fifth and Fourth circuits in *Bryant Woods Inn, Inc.,* 124 F.3d at 603–604 and *Elderhaven, Inc. v. City of Lubbock, Texas,* 98 F.3d 175, 178 (5th Cir.1996). The City, however, offers no reason for choosing this regime over the method used by the Second, Third, Eighth, Ninth, and Tenth Circuits which require a plaintiff to make an initial showing that an accommodation is reasonable, but then places the burden on the defendant to show that the accommodation is unreasonable. *See e.g., Lapid–Laurel, L.L.C.,* 284 F.3d at 457; *Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir.2002), *petition for cert. filed,* No. 01–1878 (June 20, 2002); *Jackan v. New York State Dep't of Labor,* 205 F.3d 562, 566 (2d Cir.2000), *cert. denied,* 531 U.S. 931, 121 S.Ct. 314, 148 L.Ed.2d 251 (2000); *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 950 (8th Cir.1999); *White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995).

*Id.* at 783–84.

Similarly, the Court of Appeals for the Third Circuit, in *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir. 1996), held that a defendant, sued under the Federal Fair Housing Act, bears the burden of proving the requested accommodation is not reasonable. *Id.* at 1103. In *Hovsons,*

the complainant had received a "certificate of need" to establish a residential group home for disabled individuals, but the county zoning board refused to grant a variance to allow the group home to be built. Hovsons brought suit under the Federal Fair Housing Act, claiming that the county had unreasonably denied his requested for a variance. The district court denied Hovsons relief, noting that he had failed to prove the accommodation was reasonable. The Third Circuit reversed, however, because its own precedent regarding reasonable accommodations, under Section 504 of the Rehabilitation Act, codified at Section 794 of Title 29 of the United States Code (2006), required the defending party to prove that a requested accommodation was unreasonable:

> Our precedents interpreting § 504 of the Rehabilitation Act have held that the burden of proving that a proposed accommodation is not reasonable rests with the defendant. *See Juvelis v. Snider,* 68 F.3d 648, 653 & n. 5 (3d Cir.1995); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1385 (3d Cir.1991). As we have already held that courts must look to the body of law developed under § 504 of the Rehabilitation Act as an interpretative guide to the "reasonable accommodations" provision of the FHAA, we further hold that the burden should have been placed upon the Township of Brick to prove that it was either unable to accommodate Hovsons or that the accommodation Hovsons proposed was unreasonable.

*Id.* at 1103. *See also Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir.2002) ("Vinson bore the initial burden of producing evidence that a reasonable accommodation was possible. Thereafter, the burden shifted to the DLIR to produce rebuttal evidence that the requested accommodation was not reasonable." (internal citations omitted)); *White v. York International Corporation,* 45 F.3d 357, 361 (10th Cir.1995) ("Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate.").

██ Cameron Grove urges us to adopt the burden of proof articulated by the Fourth, Fifth, and Sixth Circuits, while the Commission argues that we should adopt the policy of the other Circuits, relying principally on *Hovsons*. We agree with the Commission that once the complaining party proves a *prima facie* case of reasonableness, the defending party ultimately bears the burden of showing the accommodation is unreasonable.[12] A plaintiff will rarely, if ever, be in a position to prove that cost to the defendant, in light of the defendant's financial condition, does not outweigh the benefit to the disabled individual; a complaining party will not have access to the financial and asset information of a defending party absent discovery. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995) (requiring a court to balance, when determining the reasonableness of a requested accommodation, the "cost (to the defendant) and benefit (to the plaintiff")).[13]

Complainants alleging housing discrimination will rarely, if ever, have the financial information to prove that the defending party has the resources to afford an accommodation. Because of this asymmetry of information, we hold that a

---

**12.** Once a plaintiff submits evidence sufficient to support a *prima facie* case, the defendant normally bears the burden of going forward. *See, e.g., Omayaka v. Omayaka*, 417 Md. 643, 656–57, 12 A.3d 96, 104 (2011) ("[A]fter [a] party establishes a prima facie case that monies have been dissipated, i.e. expended for the principal purpose of reducing the funds available for equitable distribution, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate." (internal citation and quotation omitted)).

**13.** In *Lapid–Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442, 459 (3d Cir.2002), the Third Circuit addressed the burden allocation in light of necessity. The Court recognized the informational conundrum when it considered the issue of burden and ruled that the complaining party must establish necessity, but after that was accomplished the burden shifted to the defending party to establish unreasonableness. The court stated, "[w]hile a plaintiff is in the best position to show what is necessary to afford its clients (i.e., the handicapped population that it wishes to serve) an equal opportunity to use and enjoy housing, a defendant municipality is in the best position to provide evidence concerning what is reasonable or unreasonable within the context of its zoning scheme." *Id.* at 458.

complainant must make a *prima facie* showing that the requested accommodation is generally reasonable, but that the defending party must ultimately prove that the accommodation is unreasonable, given its cost and the financial status of the defending party.

██  The final two questions presented by Cameron Grove involve challenges to the manner in which the Appeal Board rendered its decision. Cameron Grove complains that the Appeal Board erred by "ignoring the Planning Board's Specific Design Plan" and by failing to perform the balancing test required under Section 22(a)(9).

Cameron Grove's argument, in essence, is that the Board made two errors in conducting its analysis: failing to mention the Specific Design Plan and failing to perform "a cost versus benefit analysis to determine if the benefit to the Complainants outweighed the costs of undermining Cameron Grove's legitimate purpose of protecting the safety of all Cameron Grove residents." These arguments are intertwined, in that the alleged monetary cost of "protecting the safety of all Cameron Grove residents" should have been measured, according to Cameron Grove, by the cost of installing a security system that Cameron Grove argues was required under the Specific Design Plan, but not completed at the inception of the building. Cameron Grove also alleges that there was an "inestimable cost of undermining the security of the community" posed by giving out keys, because there had been previous instances of vandalism in the community.

██  An appellate court reviewing the Board's decision is to determine whether it is supported by substantial evidence in the record. *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 577, 650 A.2d 226, 230 (1994) ("A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."). Where, as here, the Board adopted most of the administrative law judge's findings but invalidated other find-

ings of the administrative law judge, the Board must have made findings of its own, in lieu of those invalidated, as long as these findings did not involve credibility determinations. *See Anderson v. Department of Public Safety and Correctional Services,* 330 Md. 187, 217, 623 A.2d 198, 212–13 (1993).

We deal first with Cameron Grove's assertion that the Board erred by not taking into account the "inestimable cost of undermining the security of the community." With regard to this issue, the Board considered two facets of the cited security concerns: the doors themselves and a potential increase in the risk of criminal acts in the community. With respect to the administrative law judge's finding that the doors themselves presented a significant danger, the Board found that warning signs could have been posted on the doors and that only Ms. Daniel and Mr. Doby were going to use the side and back doors:

> The ALJ accepted as valid the [Cameron Grove]'s argument that the key request was unreasonable because the side and back (loading dock) doors were not sufficiently equipped to serve as exits/entrances. [Cameron Grove] argued that as the doors had no windows and were very heavy, allowing them to be used for exiting and entering would create a safety hazard: that the person using the door might inadvertently injure someone on the other side due to lack of visibility and the weight of the doors. This concern could have been addressed by posting warning signs to direct persons to use caution when opening the doors. Additionally, the Complainants, not all residents, due to the extenuating needs which their disabilities presented, were the ones who would have been using the doors. Therefore, there should not have been any concern about regular flow of traffic of persons entering and exiting through those doors. Finally, as [Cameron Grove] has since furnished keys to the doors in question, [Cameron Grove] presumably found ways to adequately meet those safety concerns.

With respect to the administrative law judge's findings that giving the complainants keys to the doors would expose Cam-

eron Grove to additional security problems, the Board found that the finding was unsupported in the record:

The ALJ concluded that [Cameron Grove]'s position— that furnishing keys to Daniel and Doby would make Condo II "even more vulnerable to breaches in its safety from individuals who are not residents"—was correct. This conclusion is not supported by the evidence of record. The vandalism of the cars involved no entry to Condo II. There is no evidence that these and the other above cited incidents were not perpetrated by residents or guests of residents. Additionally, even if non-residents had committed the acts, there was no evidence that they had obtained entry to Condo II by the side/back doors. There was no connection between Daniel and Doby having keys and any unauthorized entry. Further, any misuse of the keys could have been guarded against by imposition of penalties and warning signs to residents placed on the doors in question.

In both instances, the Board's findings were supported by the record. The record reflected that Cameron Grove did furnish keys to all residents, obviating the voiced concerns about the doors themselves being safety and security hazards. Furthermore, there was no evidence that the side and back doors had been used to gain entrance to the buildings in security breaches, nor was there any evidence that giving keys to Ms. Daniel and Mr. Doby would increase the risk of a security incident.[14]

---

**14.** The findings of the administrative law judge regarding the nature of the security issues at Cameron Grove II that the Board adopted were:

23. Sometime prior to June 2003, the side and loading dock door locks were removed without authorization. The police were called to address the issue. The cost to replace the locks was approximately $600.00.
28. On October 28, 2003, eight cars and trucks were vandalized in the [Cameron Grove] II parking lot. The police were called as a result of this incident.
29. In December 2003, someone removed the locks from the side and loading dock doors.
30. In March, 2004, someone broke a key off in the [Cameron Grove] II master postal lock.

With respect to the Specific Design Plan, the administrative law judge found only that:

15.  Before the [Cameron Grove] condominium buildings were constructed, [the builder] filed a Specific Design Plan (SDP) with the Prince George's County Department of Parks and Planning (PGP & P).

16.  The SDP states that residents should receive "pass cards" for the front door and side doors for each condominium building.  The SDP also states that all entry doors will have alarms monitored by a video camera and a security service.

17.  In or about May 1998, PGP & P approved the [Cameron Grove] SDP.

While the Board did not reference the Specific Design Plan, it did consider the substance of the Plan [15] and found that providing the keys did not implicate the installation of a passcard and alarm system:

As to [Cameron Grove]'s contention that furnishing keys would have been too costly given their budget, the Complainants requested their own keys, not installation of a security and pass code (for all residents, non-disabled included) system requiring thousands of dollars.  On the

31.  Sometime shortly prior to October 2005, [Cameron Grove] II experienced the following incidents:
  a.  Side and rear doors were taped open;
  b.  Items were taken from the hallway shelves belonging to some of the units;
  c.  A United Parcel Service package was ripped open and searched;
  d.  Lobby plants were vandalized.
32.  On numerous occasions, toothpicks have been placed in the locks of the side door to disable the locking mechanism.  The tooth picks had to be removed using a knife.

**15.**  In this regard, the Board accepted the three findings made by the administrative law judge regarding the Specific Design Plan and the administrative law judge's finding that, "[o]n or about October 11, 2006, Norva Jackson [the president of the Board of Directors] obtained an estimate for the installation of a security system with cameras and a keycard system from Tenn Pro–Tec Systems.  Tenn Pro–Tec Systems . . . estimated that the cost of that project would be approximately $18,900.00, excluding electricity."

contrary, providing the keys was feasible and practical under the circumstances. [Cameron Grove] had considered a bid totaling $18,900 to install a pass card and/or security system at the side/back doors. Installation of a security system with pass card issuance for all residents is not what the Complainants had requested. The Complainants in their disabilities simply needed their own keys to the side/back doors to assist their mobility. It was error for [Cameron Grove] to refuse to relax its "no key" policy for issuance of keys to the Complainants. The costs to [Cameron Grove] of providing the Complainants with their own keys was negligible as [Cameron Grove's] President in her testimony revealed that she did already in fact have keys to the side/back doors. Additionally, recently all residents have been provided keys at no additional cost to the side/back doors.

There was substantial evidence in the record to support the Board's ultimate decision, taking into consideration the findings of the administrative law judge adopted by the Board, in addition to the findings of the Board itself regarding the security concerns and the Specific Design Plan; thus, we affirm.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY CAMERON GROVE.**

HARRELL, J., joins in judgment only.