Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2019 01:05 AM CDT

Brooke Wilkison, individually and
on behalf of Brianna Wilkison,
a minor child, appellee, v. City
of Arapahoe, appellant.

___ N.W.2d ___

Filed April 25, 2019.    No. S-18-196.

1. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
2. **Ordinances: Zoning: Injunction: Equity.** An action to declare an ordinance void and to enjoin its enforcement is equitable in nature.
3. **Declaratory Judgments: Equity: Appeal and Error.** In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.
4. **Ordinances: Appeal and Error.** Interpretation of a municipal ordinance is a question of law, on which an appellate court reaches an independent conclusion irrespective of the determination made by the court below.
5. **Courts: Statutes: Ordinances.** When reviewing preemption claims, a court is obligated to harmonize, to the extent it legally can be done, state and municipal enactments on the identical subject.
6. **Statutes: Appeal and Error.** The interpretation of statutes and regulations presents questions of law which an appellate court reviews de novo.
7. **Federal Acts: Discrimination.** The federal Fair Housing Act, as originally enacted in 1968, prohibited the denial of housing on the basis of race, color, religion, or national origin.
8. ____: ____. The federal Fair Housing Act was amended in 1988 to protect against discriminatory practices on the basis of disability.

9. **Federal Acts: Discrimination: Constitutional Law.** The stated policy of the federal Fair Housing Act is "to provide, within constitutional limitations, for fair housing throughout the United States."

10. **Courts: Federal Acts.** When construing the federal Fair Housing Act, courts are to give a generous construction to the act's broad and inclusive language.

11. **Federal Acts.** The federal Fair Housing Act's exemptions must be narrowly construed.

12. **Federal Acts: Discrimination.** The federal Fair Housing Act prohibits both individuals and governmental entities from engaging in proscribed forms of discrimination.

13. ____: ____. Prohibited discrimination under the federal Fair Housing Act includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

14. **Federal Acts: Claims: Proof.** The ultimate burden to prove both the reasonableness and the necessity of a requested accommodation remains always with the plaintiffs asserting a reasonable accommodation claim under the federal Fair Housing Act.

15. **Federal Acts: Discrimination.** To determine whether an accommodation under the federal Fair Housing Act is reasonable, the inquiry is highly fact specific, requires balancing the needs of the parties, and involves assessing both financial and administrative costs and burdens.

16. ____: ____. An accommodation under the federal Fair Housing Act is reasonable if it is both efficacious and proportional to the costs to implement it, and an accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program.

17. **Federal Acts: Discrimination: Proof.** To show that an accommodation is necessary, a plaintiff in a case under the federal Fair Housing Act must show that the accommodation was indispensable or essential to the plaintiff's equal opportunity to use and enjoy his or her dwelling.

Appeal from the District Court for Furnas County: James E. Doyle IV, Judge. Reversed and remanded.

Kevin D. Urbom, Arapahoe City Attorney, for appellant.

Nathaniel J. Mustion, of Mousel, Brooks, Schneider & Mustion, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PER CURIAM.

The City of Arapahoe, Nebraska, appeals the declaratory judgment and injunction entered by the district court for Furnas County enjoining Arapahoe from enforcing an ordinance against Brooke Wilkison (Brooke) to prohibit his retention of a Staffordshire terrier at his home within the city limits of Arapahoe. This order, in declaring the ordinance invalid as applied to Brooke, determined that the ordinance would violate the federal Fair Housing Act (FHA)[1] by permitting a discriminatory housing practice and precluding Brooke from mitigating the ill effects of his handicap by living with his emotional assistance animal. Arapahoe, on appeal, claims the FHA does not apply to municipal ordinances, that it should not have been enjoined from enforcing its ordinance against Brooke, and that it was error to determine that it was a reasonable accommodation under the FHA to allow Brooke to keep the dog. For the reasons set forth herein, we reverse, and remand.

BACKGROUND

In 1984, Brooke underwent brain surgery which resulted in partial paralysis to the left side of his body. This paralysis and its effects remain, and Brooke contends that his medical issues cause him to be easily frustrated.

In 2015, Brooke got an American Staffordshire terrier—what is commonly known as a pit bull—and brought him to his home in Arapahoe. Brooke testified that the dog, named "Chewy," is a regular companion and provides him with support for dealing with the frustration he experiences as a result of his physical limitations.

Arapahoe passed an ordinance in December 2016 relating to "dangerous dogs." Section 6-109 of the ordinance defined

---

[1] See 42 U.S.C. §§ 3601 to 3619 (2012).

a "dangerous dog" as "any dog that has inflicted injury upon a human being that required medical treatment by a physician or any other licensed health care professional." That section also described prohibited certain breeds and stated:

> The following breeds shall be prohibited and or banned from being within the city limits of Arapahoe at any time. These breeds are as follows: Pit Bulls & Staffordshire Terriers, Rottweilers, and any cross breed that contains one or more of those breeds. With reference to those who own these breeds and have been licensed within the City of Arapahoe prior to January 1st, 2017, the animal will be grandfathered in as acceptable, however, in the event that said animal is found to be at large the grandfather status will be revoked and will be deemed prohibited at that time.

Section 6-111 of the ordinance directed that the owner of a prohibited dog is guilty of a Class IIIA misdemeanor, and § 6-112 of the ordinance instructed that a prohibited dog that has inflicted injury "shall be immediately confiscated by an animal control authority, placed in quarantine for the proper length of time, and thereafter destroyed in an expeditious and humane manner."

Brooke's dog was not registered with Arapahoe prior to January 1, 2017. According to Brooke's wife, she attempted to register the dog but was refused due to incorrect paperwork. In January, after the ordinance went into effect, a law enforcement officer informed Brooke he would have to get rid of the dog, because it was one of the prohibited breeds under the ordinance.

Following the interaction with the law enforcement officer, Brooke obtained a statement on a prescription pad from a physician assistant, who is one of Brooke's medical providers, that recommended Brooke be able to keep the dog inside as a therapy animal, given his disability. Brooke, individually and on behalf of his daughter, then filed suit in the district court seeking a declaratory judgment and an injunction to prevent

Arapahoe from implementing and enforcing the ordinance. Brooke asserted three causes of action: (1) that the ordinance violated the FHA which prohibits housing practices that discriminate on the basis of disability; (2) that the ordinance violated the U.S. Constitution's Equal Protection Clause, because it singled out certain breed owners for disparate treatment without any rational purpose for doing so; and (3) that the ordinance violated the U.S. Constitution's Due Process Clause, because it deprived him of property without proof that the dog was a vicious or dangerous animal.

After a trial in this matter, the court issued an order declaring the ordinance invalid as applied to Brooke's retention of the dog in his home and enjoining Arapahoe from enforcing the ordinance against Brooke. The court determined that, if enforced against Brooke, the ordinance would violate the FHA "by permitting a discriminatory housing practice, i.e., precluding Brooke from mitigating the ill effects of his handicap by living with his emotional assistance animal." Thus, the court concluded that the ordinance was "preempted by the FHA in the context of Brooke's use of his emotional support animal." The court rejected Arapahoe's argument that its ordinance was exempted from the operation of the FHA. The court specified that nothing in the injunction or declaratory judgement precludes Arapahoe from requiring licensing of any animal kept within Arapahoe's city limits by Brooke. Because it granted relief based on the FHA, the court did not consider the causes of action based on the Equal Protection and Due Process Clauses.

## ASSIGNMENTS OF ERROR

Arapahoe assigns, restated, that the district court erred in entering the declaratory judgment and enjoining the city from enforcing the ordinance by (1) holding that the FHA applies to the ordinance enacted by the city and (2) determining that keeping a specific animal prohibited by the city ordinance is a reasonable and necessary accommodation under the FHA.

## STANDARD OF REVIEW

[1-3] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[2] An action to declare an ordinance void and to enjoin its enforcement is equitable in nature.[3] In reviewing an equity action for a declaratory judgment, an appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court, subject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[4]

[4-6] Interpretation of a municipal ordinance is a question of law, on which we reach an independent conclusion irrespective of the determination made by the court below.[5] When reviewing preemption claims, a court is obligated to harmonize, to the extent it legally can be done, state and municipal enactments on the identical subject.[6] The interpretation of statutes and regulations presents questions of law which we review de novo.[7]

## ANALYSIS

### APPLICABILITY OF FHA

[7-10] Arapahoe's first assignment of error centers on the applicability of the FHA. The FHA, as originally enacted in

---

[2] *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

[3] *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). See, also, *R & S Investments v. Auto Auctions*, 15 Neb. App. 267, 725 N.W.2d 871 (2006).

[4] *Fredericks Peebles, supra* note 2.

[5] *Malone v. City of Omaha*, 294 Neb. 516, 883 N.W.2d 320 (2016).

[6] *Id.*

[7] *Id.*

1968, prohibited the denial of housing on the basis of race, color, religion, or national origin.[8] The FHA was amended in 1988 to protect against discriminatory practices on the basis of disability.[9] The stated policy is "to provide, within constitutional limitations, for fair housing throughout the United States."[10] The U.S. Supreme Court has held that when construing the FHA, courts are to give a generous construction to the FHA's broad and inclusive language.[11]

The FHA defines a discriminatory housing practice as any act that is unlawful under 42 U.S.C. § 3603 (effective dates of certain prohibitions), 42 U.S.C. § 3604 (discrimination in sale or rental of housing and other prohibited practices), 42 U.S.C. § 3605 (discrimination in residential real estate-related transactions), or 42 U.S.C. § 3606 (discrimination in provision of brokerage services) of this title.[12] Under 42 U.S.C. § 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section[s] 3603, 3604, 3605, or 3606 of this title." Section 3617 sets forth that an interference claim does not demand a substantive violation of §§ 3603 through 3606, but instead requires proof of three elements: (1) that the petitioner exercised or enjoyed "any right granted or protected by" §§ 3603 through 3606, (2) that the

---

[8] *Texas Dept. of Housing and Community v. ICP*, ___ U.S. ___, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995).

[9] *Id.*

[10] 42 U.S.C. § 3601.

[11] *Oxford House, Inc., supra* note 8. See, also, *Revock v. Cowpet Bay West Condominium Association*, 853 F.3d 96 (3d Cir. 2017); *U.S. v. University of Nebraska at Kearney*, 940 F. Supp. 2d 974 (D. Neb. 2013).

[12] See 42 U.S.C. § 3602(f).

respondent's conduct constituted interference, and (3) that a causal connection existed between the exercise or enjoyment of the right and the respondent's conduct.[13]

In addition, 42 U.S.C. § 3615 provides:

Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.

In the instant case, Arapahoe does not assign the district court erred in determining the elements of a § 3617 claim existed. Instead, Arapahoe contends that § 3603(b) exempts it from the requirements of the FHA.

The applicable language of 42 U.S.C. § 3603(b)(1) provides that nothing in § 3604 (other than subsection (c)) shall apply to "any single-family house sold or rented by an owner," provided that "such private individual owner does not own more than three such single-family houses at any one time[.]" Arapahoe argues that Brooke's claim based on the FHA cannot proceed, because the exemption under § 3603(b)(1) applies to Brooke's residence as a single-family house whose owner owns less than three such single-family houses at any one time.

[11] As noted above, the FHA must be broadly construed to effectuate its purpose of providing "for fair housing

---

[13] See, *Revock, supra* note 11; *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519 (6th Cir. 2013); *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (en banc); *U.S. v. City of Hayward*, 36 F.3d 832 (9th Cir. 1994).

throughout the United States."[14] For the same reason, the FHA's exemptions must be narrowly construed.[15]

[12] The FHA prohibits both individuals and governmental entities from engaging in proscribed forms of discrimination.[16] The statutory provision relied upon by Arapahoe was designed to exempt individuals who own three or less "single-family houses" from the strictures of the FHA, not to shield governmental entities from FHA claims based on generally applicable zoning ordinances on the basis that such claims may involve "single-family houses."[17] If we read § 3603(b) utilizing Arapahoe's offered interpretation, then single-family homeowners would be prohibited from seeking redress under the FHA from local ordinances that discriminate against persons with disabilities, while owners with more single-family houses would retain such right. From a plain reading of § 3603(b), it is clear no such distinction was intended by the FHA. For these reasons, Arapahoe was not exempt and cannot rely on § 3603(b)(1) to defeat the FHA claim.

## 2. Reasonable and Necessary Accommodation Under FHA

Arapahoe contends that even if the exemption under § 3603(b)(1) does not apply to the case at bar, the district court erred in enjoining enforcement of the ordinance against Brooke. Arapahoe argues that under the FHA, it is required to

---

[14] 42 U.S.C. § 3601. See, also, *Oxford House, Inc., supra* note 8; *Revock, supra* note 11; *University of Nebraska at Kearney, supra* note 11.

[15] See 42 U.S.C. §§ 3601 and 3603(b). See, also, *Hogar Agua y Vida en el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994); *Massaro v. Mainlands Section 1 & 2 Civic Ass'n*, 3 F.3d 1472 (11th Cir. 1993); *McKivitz v. Township of Stowe*, 769 F. Supp. 2d 803 (W.D. Pa. 2010); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845 (N.D. Ill. 2003).

[16] See, *McKivitz, supra* note 15; *Spieth v. Bucks County Housing Authority*, 594 F. Supp. 2d 584 (E.D. Pa. 2009); *Dr. Gertrude A. Barber Center, Inc. v. Peters Tp.*, 273 F. Supp. 2d 643 (W.D. Pa. 2003).

[17] See 42 U.S.C. § 3603(b)(1). See, also, *McKivitz, supra* note 15; *Trovato v. City of Manchester, N.H.*, 992 F. Supp. 493 (D.N.H. 1997).

provide Brooke an accommodation that is both reasonable and necessary, but that the injunction was neither. Arapahoe notes that the ordinance did not prohibit Brooke from having a service animal, but instead only prohibited ownership of certain dog breeds. Moreover, the ordinance includes an exception for those breeds if the dog was registered prior to the operative date of the ordinance and that such was available to Brooke, who did not fully avail himself of that option.

[13,14] Prohibited discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[18] The ultimate burden to prove both the reasonableness and the necessity of a requested accommodation remains always with the plaintiffs asserting a reasonable accommodation claim under the FHA.[19]

[15,16] To determine whether an accommodation is reasonable, the inquiry is highly fact specific, requires balancing the needs of the parties, and involves assessing both financial and administrative costs and burdens.[20] An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it, and an accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program.[21] "'A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden.'"[22]

---

[18] 42 U.S.C. § 3604(f)(3)(B). See, also, *Developmental Services of NE v. City of Lincoln*, 504 F. Supp. 2d 714 (D. Neb. 2007).

[19] See *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531 (6th Cir. 2014).

[20] See, *Revock, supra* note 11; *Developmental Services of NE, supra* note 18.

[21] See *Developmental Services of NE, supra* note 18.

[22] *Hollis, supra* note 19, 760 F.3d at 542.

Though Arapahoe argues that the dog was not a "service dog" as defined by the Americans with Disabilities Act of 1990, such distinction is inconsequential. Unlike that act, the FHA does not set forth minimum regulatory requirements for animals to qualify as a reasonable accommodation.[23] Under a ruling by the U.S. Department of Housing and Urban Development, emotional support animals do not require task-specific training.[24]

Arapahoe has not argued allowing such accommodation would result in undue financial or administrative burdens. Instead, Arapahoe's arguments center on allegations that such an accommodation would fundamentally alter the ordinance and diminish the ability of the city to limit dangerous animals.

Other courts have found accommodations are reasonable under the FHA, which include the use of an emotional support animal in one's own home, despite the existence of a rule, policy, or law prohibiting such an animal.[25] In those instances, even though the accommodations made exceptions to the general programs, such exceptions were limited in scope and the courts did not find the accommodations fundamentally altered the existing rules, policies, or laws or the ability of the institutions to enact and enforce them.

Similarly, in the case at hand, allowing Brooke to maintain his dog in his house does not undermine Arapahoe's ability to protect its citizens against dangerous animals. Though the U.S. Department of Housing and Urban Development allows for the denial of a reasonable accommodation in the form

---

[23] See, 28 C.F.R. app. A, § 35 (2018); *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015).

[24] *Warren v. Delvista Towers Condominium Ass'n, Inc.*, 49 F. Supp. 3d 1082 (S.D. Fla. 2014), citing Pet Ownership for the Elderly and Persons With Disabilities, 73 Fed. Reg. 63,834 (Oct. 27, 2008).

[25] See, e.g., *Castillo Condo. v. U.S. Dept. of Housing*, 821 F.3d 92 (1st Cir. 2016); *Anderson, supra* note 23; *Chavez v. Aber*, 122 F. Supp. 3d 581 (W.D. Tex. 2015); *Bhogaita v. Altamonte Heights Condominium Ass'n*, 765 F.3d 1277 (11th Cir. 2014).

of an assistance animal if the "'animal's behavior poses a direct threat and its owner takes no effective action to control the animal's behavior so that the threat is mitigated or eliminated,'"[26] nothing in the record indicates that Chewy has been dangerous in the past or poses a direct threat to others. The exception extended to Brooke is limited to Chewy's being kept in the house and does not preclude Arapahoe from requiring Brooke to license the dog. The ordinance presently creates an exception for dogs licensed prior to the effective date of the ordinance.

Accommodating Brooke's disability by allowing him to maintain his dog would not fundamentally alter the ordinance and diminish the ability of Arapahoe to limit dangerous animals.

Arapahoe also claims that the accommodation is unnecessary, because Brooke has other dog breed options which are not prohibited by the ordinance. The FHA "links the term 'necessary' to the goal of equal opportunity. . . . Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice."[27] "'[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'"[28] As a result, "[t]he necessity element is, in other words, a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive."[29]

---

[26] See *Warren, supra* note 24, 49 F. Supp. 3d at 1087.

[27] *Smith & Lee Associates v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996).

[28] *Id.*

[29] *Hollis, supra* note 19, 760 F.3d at 541.

[17] But while a plaintiff must show that a requested accommodation enhances the enjoyment of his or her residence, it does not follow that all accommodations that do so are necessary. "The word ['necessary'] implies more than something merely helpful or conducive. It suggests instead something 'indispensable,' 'essential,' something that 'cannot be done without.'"[30] In addition, the "FHA's necessity requirement doesn't appear in a statutory vacuum, but is expressly linked to the goal of 'afford[ing] . . . equal opportunity to use and enjoy a dwelling.'"[31] Put simply, the FHA requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without.[32] As the foregoing discussion illustrates, to show that the accommodation was necessary, Brooke was required to show that the accommodation was indispensable or essential to his equal opportunity to use and enjoy his dwelling.

Here, Brooke has presented evidence showing he has a disability stemming from a previous surgery and manifesting in partial paralysis. He has owned his dog since 2015 and testified that the dog is a regular companion that provides support for dealing with the frustration Brooke experiences as a result of his physical limitations. Specifically, Brooke testified that Chewy gets him up and moving around and motivated, because the dog needs to go outside to relieve itself; that an American Staffordshire terrier is "the most loving dog in the world"; and that when Brooke, who is a full-time college student, gets

---

[30] *Cinnamon Hills Youth Crisis v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012), quoting 10 The Oxford English Dictionary 276 (2d ed. 1989). See, also, *Vorchheimer v. Philadelphian Owners Association*, 903 F.3d 100 (3d Cir. 2018).

[31] *Cinnamon Hills Youth Crisis, supra* note 30, 685 F.3d at 923, quoting 42 U.S.C. § 3604(f)(3)(B).

[32] *Id.* See, also, *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008); *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597 (4th Cir. 1997).

"brain fog" or "tired of studying," Chewy comes over and nudges Brooke to get his homework done. Brooke also testified that Chewy is like one of the family and that he keeps him calm and helps with Brooke's stress.

However, the evidence indicates that at the time of the hearing, Brooke has suffered from his disability for nearly 35 years and has lived in his current home for 3 years, but has owned Chewy for only the last 2 years. In addition, the evidence indicates that Brooke has owned another dog for almost 5 years. Brooke offered no evidence that but for his requested accommodation of keeping Chewy, he would likely be denied an equal opportunity to enjoy the housing of his choice.

Though Brooke offered the written statement from his physician assistant recommending that given Brooke's disability, he be able to keep the dog inside as a therapy dog, the physician assistant offered no testimony about the specific benefits the dog provides. Further, there is no indication that the physician assistant was aware of Brooke's other dog, or what benefits that dog, or any other dog not covered by Arapahoe's ordinance, could provide Brooke. In addition, the physician assistant conducted no testing of Brooke's mental functioning or emotional well-being to determine what his therapeutic needs may be or how Chewy was uniquely able to meet them.

It is true that the FHA requires reasonable accommodations necessary for a disabled individual to receive the same enjoyment from the property as a nondisabled person would receive, not merely those accommodations that the disabled individual cannot function without or for which no alternative is available.[33] However, the FHA's necessity element requires that an accommodation be essential to the equal enjoyment from the property, not just preferable.[34] The plain meaning

---

[33] See, *Anderson, supra* note 23; *Developmental Services of NE, supra* note 18.

[34] *Vorchheimer, supra* note 30.

of "necessary" requires courts to consider the alternatives on offer.[35]

We find that Brooke failed to prove that an accommodation from Arapahoe's ban on certain breeds of dogs was essential to Brooke's equal enjoyment of his property. Assuming without deciding that it is necessary for Brooke to have an emotional support dog, he did not show that to have the equal opportunity to use and enjoy his dwelling, it was essential that he be allowed to keep a dog banned by Arapahoe's ordinance. Brooke already owned another dog, and the ordinance covered only certain breeds of dogs. Brooke failed to prove that other dogs not covered by the ordinance could not provide comparable therapeutic benefit to Brooke with regard to his disability. No evidence was offered that Chewy provided more support than Brooke's other dog or other dogs not covered by the ordinance, and Brooke did not testify that Chewy was a better option, much less essential to his enjoyment of his residence. Nothing in the FHA gives Brooke a right to his preferred option.

Based upon the record before us, Brooke has failed to meet his burden of proof that his requested accommodation is necessary for him to receive the same enjoyment from his home as a nondisabled person would receive.

### 3. Brooke's Other Claims for Relief

In his complaint, Brooke raised two additional causes of action: violations of the Equal Protection and Due Process Clauses of the 14th Amendment to the U.S. Constitution. However, the district court did not address Brooke's constitutional claims, because it found Brooke was entitled to relief on his first claim that the ordinance, as applied, violated his rights under the FHA. As a result, this matter must be remanded to the district court for consideration of the two remaining claims.

---

[35] *Id.*

## CONCLUSION

In consideration of all the above, the district court erred in entering a declaratory judgment and enjoining Arapahoe from enforcing the ordinance as applied to Brooke. Arapahoe was not exempt by 42 U.S.C. § 3603(b)(1) from Brooke's claims under the FHA; however, Brooke failed to show that allowing him to retain "Chewy" in his home was necessary.

Reversed and remanded.